UNITED STATES of America, Appellee,

v.

Ramon CASTRO–LARA, Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

Abraham OBJIO SARRAFF, Defendant, Appellant.

Nos. 91–1736, 91–1737.

United States Court of Appeals, First Circuit.

Submitted June 17, 1992.

Decided July 29, 1992.

H. Manuel Hernandez, Longwood, Fla., on brief for defendant, appellant Ramon Castro–Lara.

Jose Antonio Pagan Nieves, Old San Juan, P.R., on brief for defendant, appellant Abraham Objio Sarraff.

Daniel F. Lopez–Romo, U.S. Atty., and Carlos A. Perez, Asst. U.S. Atty., Hato Rey, P.R., on brief for the U.S.

Before TORRUELLA, SELYA and BOUDIN, Circuit Judges.

SELYA, Circuit Judge.

Defendants Ramon Castro–Lara (Castro) and Abraham Objio Sarraff (Objio) were arrested, indicted, tried, and convicted on three counts of aiding and abetting violations of the drug trafficking laws.[1] In addition, Objio was convicted on a charge of violating 18 U.S.C. § 924(c)(1) (1988) (criminalizing the "use[ ] or carri[age]" of a firearm "during and in relation to any ... drug trafficking crime"). Defendants appeal. We affirm.

## I.

### The Essential Facts

The facts necessary to put these appeals into workable perspective are for the most part undisputed.

On January 24, 1991, a government agent, Rafael Valle–Ortiz (Valle), received a tip from an informant that a drug shipment was to arrive in Puerto Rico on the next Caribe Express flight from Santo Domingo. The informant described the putative courier. The authorities proceeded to stake out the airstrip in question.

An incoming flight from Santo Domingo soon landed. The crew members (including a crewman, later identified as Castro, who matched the informant's description) disembarked and drove together to the nearby town of Aguadilla. Once there, Castro did some shopping. He then spoke with anoth-er person (subsequently identified as Objio). The two men entered Objio's car and returned to the airfield. Castro boarded the aircraft. When he deplaned, he was carrying a bag which he placed in Objio's vehicle. As the two men prepared to drive away, the authorities intervened.

The bag was found to contain 3,007 grams of cocaine. A consensual search of the car's trunk revealed a briefcase owned by Objio. Inside the briefcase was an unloaded, but otherwise fully operable, revolver; live ammunition; and, according to some witnesses, an envelope containing $6,000 in cash.

## II.

### Castro's Appeal

Castro advances a single assignment of error, contending that the district court erred in denying his motion for judgment of acquittal "based on the total lack of admissible evidence that [he] knowingly and intentionally possessed, imported or transported cocaine."

Generally, the court of appeals reviews a defendant's challenge to the evidentiary sufficiency of the government's case by examining "whether the total evidence, taken in the light most amicable to the prosecution, together with all reasonable inferences favorable to it, would allow a rational factfinder to conclude beyond a reasonable doubt that the defendant was guilty as charged." *United States v. Maraj*, 947 F.2d 520, 522–23 (1st Cir.1991). In this instance, however, the government asserts that Castro, who moved for judgment of acquittal at the close of the prosecution's

---

1. The pertinent portions of the statutes of conviction read as follows:

    [I]t shall be unlawful for any person knowingly or intentionally—
    (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; ....
    21 U.S.C. § 841(a)(1) (1982).
    It shall be unlawful for any person to bring or possess on board any ... aircraft ... arriving in or departing from the United States ... a controlled substance ... unless such substance or drug is a part of the cargo entered in the manifest ... of the ... aircraft....

    21 U.S.C. § 955 (1982).
    It shall be unlawful to import into the customs territory of the United States from any place outside thereof ... any controlled substance ... or any narcotic drug [with exceptions not germane to this case].
    21 U.S.C. § 952(a) (1982).
    Whoever commits an offense against the United States or aids, abets, ... or procures its commission, is punishable as a principal.
    18 U.S.C. § 2(a) (1988).

case in chief, but thereafter testified in his own behalf, waived his motion by not renewing it at the close of all the evidence. We treat first with the government's claim of waiver and then proceed to address the merits of the assigned error.

### A.

### *Waiver*

■ It is settled law that a defendant who moves for judgment of acquittal at the end of the prosecution's case, but then fails to renew the motion after presenting evidence in his own behalf, waives the original motion. *See, e.g., United States v. Cheung,* 836 F.2d 729, 730 n. 1 (1st Cir. 1988) (per curiam); *United States v. Greenleaf,* 692 F.2d 182, 185 (1st Cir.1982), *certs. denied,* 460 U.S. 1069, 103 S.Ct. 1522 & 1523, 75 L.Ed.2d 946 (1983).[2] But, given other facets of the record before us, the waiver argument is an exercise in irrelevancy.

■ In this case, Castro made a timely *post-trial* motion for judgment of acquittal in conformity with Fed.R.Crim.P. 29(c).[3] We feel confident that Rule 29(c) means precisely what it says. Consequently, even absent *any* motion for judgment of acquittal at trial, a defendant who files a timeous post-trial motion for acquittal stands on the same footing as a defendant who moves for acquittal at the close of all the evidence; and the former is, therefore, entitled to the benefit of the same standard of appellate review as the latter. *See United States v.*

*Allison,* 616 F.2d 779, 784 (5th Cir.) (per curiam), *cert. denied,* 449 U.S. 857, 101 S.Ct. 156, 66 L.Ed.2d 72 (1980); *Government of the Virgin Islands v. Carr,* 451 F.2d 652, 654–55 (3d Cir.1971); *see also* 8A James W.M. Moore, *Moore's Federal Practice* ¶ 29.03[2] at 29–10—29–11 & n. 12 (1992); 2 Charles A. Wright, *Federal Practice and Procedure* § 465 (1982).

■ Because Castro's post-trial motion for acquittal notwithstanding the verdict was timely,[4] there was no waiver.

### B.

### *The Merits*

Castro claims that Valle's testimony about the informant's tip was inadmissible hearsay and that the remaining evidence did not support a finding of guilty knowledge. He is wrong on both counts.

### *1.*

■ In the first place, Valle's testimony was received without objection. Hence, any potential error in the admission of the evidence was not preserved for appeal. *See United States v. Hunnewell,* 891 F.2d 955, 956–57 (1st Cir.1989); *United States v. Griffin,* 818 F.2d 97, 99 (1st Cir.), *cert. denied,* 484 U.S. 844, 108 S.Ct. 137, 98 L.Ed.2d 94 (1987); *see also* Fed.R.Evid. 103(a)(1).

### *2.*

In the second place, Valle's testimony about the informant's tip was not inadmis-

---

**2.** Where a Rule 29 motion is not preserved for appeal, the defendant forfeits the benefit of the customary standard of review, thereby negating any claim of evidentiary insufficiency unless affirming the conviction would work a "clear and gross injustice." *Cheung,* 836 F.2d at 730 n. 1.

**3.** The rule provides:

(c) Motion After Discharge of Jury: If the jury returns a verdict of guilty or is discharged without having returned a verdict, a motion for judgment of acquittal may be made or renewed within 7 days after the jury is discharged or within such further time as the court may fix during the 7–day period.... It shall not be necessary to the making of such a motion that a similar motion has been

made prior to the submission of the case to the jury.

Fed.R.Crim.P. 29(c).

**4.** The verdict was returned and the jury discharged on Wednesday, April 3, 1991. The 7–day period for filing a Rule 29(c) motion thus began to run on Thursday, April 4. *See* Fed. R.Crim.P. 45(a) ("In computing any period of time the day of the act or event from which the designated period of time begins to run shall not be included."). Castro's motion for acquittal was entered on the docket on Friday, April 12. For computational purposes, this was the seventh (and last) day of the filing period. *See id.* (with respect to periods of time less than 11 days in length, intermediate weekends are excluded from the count). Accordingly, the motion was timely.

sible hearsay. "Hearsay" is a term of art, referable to extra-judicial statements "offered in evidence to prove the truth of the matters asserted." Fed.R.Evid. 801(c). The hearsay rule does not pertain to statements adduced merely to show that they were made or that they had some effect on the future actions of a listener. *See United States v. Gibson*, 675 F.2d 825, 833–34 (6th Cir.), *cert. denied*, 459 U.S. 972, 103 S.Ct. 305, 74 L.Ed.2d 285 (1982). Thus, testimony which is not offered to prove the truth of an out-of-court statement, but is offered instead for the more limited purpose of providing relevant context or background, is not considered hearsay. *See, e.g., United States v. Freeman*, 816 F.2d 558, 563 (10th Cir.1987); *United States v. Mazza*, 792 F.2d 1210, 1215 (1st Cir.1986), *cert. denied*, 479 U.S. 1086, 107 S.Ct. 1290, 94 L.Ed.2d 147 (1987); *United States v. Love*, 767 F.2d 1052, 1063 (4th Cir.1985), *cert. denied*, 474 U.S. 1081, 106 S.Ct. 848, 88 L.Ed.2d 890 (1986).

▇▇▇▇ Here, Valle's testimony anent the tip was relevant and material to show that a conversation had taken place and that the conversation led to a full-scale surveillance. This evidence provided the jury with helpful background—table-setting information not only explaining why government agents were at the airstrip but also putting their actions into context. Thus, the testimony was admissible in evidence, notwithstanding the general proscription against hearsay.[5] Moreover, once the testimony was received into evidence generally, without objection or limitation, the jury was entitled to draw all reasonable inferences from it. *See, e.g., United States v. Tabares*, 951 F.2d 405, 409 (1st Cir.1991); *United States v. Foster*, 711 F.2d 871, 877 (9th Cir.1983), *cert. denied*, 465 U.S. 1103, 104 S.Ct. 1602, 80 L.Ed.2d 132 (1984).

*3.*

▇▇▇ In his appellate brief, Castro suggests for the first time that the probative value of this evidence was substantially outweighed by its unfairly prejudicial effect. He urges, therefore, that the evidence should have been excluded under Fed.R.Evid. 403. The short, dispositive answer to this suggestion is to be found in the raise-or-waive principle: in virtually every instance, a Rule 403 objection must be lodged when evidence is proffered. In the absence of extraordinary circumstances, not present here, such an objection cannot be raised for the first time on appeal. *See, e.g., Lewis v. Kendrick*, 944 F.2d 949, 952 (1st Cir.1991); *see also Freeman v. Package Machinery Co.*, 865 F.2d 1331, 1338 (1st Cir.1988) ("the importance of a contemporaneous objection is at its zenith" in respect to Rule 403 objections in view of the "balancing calculus which that rule demands"). This case is fully subject to the raise-or-waive principle.

*4.*

With or without the disputed testimony, we believe that there was ample evidence to warrant a guilty verdict.

▇▇▇▇ It is true that the government's case against Castro was largely based on circumstantial evidence. But, circumstantial evidence, in and of itself, is often enough to ground a conviction. *See, e.g., United States v. Ortiz*, 966 F.2d 707, 711 (1st Cir.1992); *Maraj*, 947 F.2d at 523. Here, the circumstances were little short of damning. The inference of guilty knowledge was, therefore, powerful.

It is also true, as Castro asseverates, that a jury could perhaps have chosen to credit his testimony that he believed the bag he was carrying contained auto parts. Or, the jury might perhaps have resisted an inference of guilty knowledge despite the collocation of circumstantial proof. Yet, neither of those perhapses call for reversal of Castro's conviction. As to the former possibility, we have frequently remarked that credibility judgments are uniquely within the jury's realm. *See, e.g., Ortiz*, 966 F.2d at 713; *United States v. Batista–Polanco*, 927 F.2d 14, 17 (1st Cir.

---

**5.** Because no error attended the admission of the challenged testimony, we need not conduct a "plain error" analysis.

1991). As to the latter possibility, we merely repeat the truism that the government's proof "need not exclude every reasonable hypothesis of innocence, provided the record as a whole supports a conclusion of guilt beyond a reasonable doubt." *United States v. Victoria–Peguero*, 920 F.2d 77, 86–87 (1st Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2053, 114 L.Ed.2d 458 (1991). In the case at bar, this obstacle was vaulted with room to spare.

### III.

#### *Objio's Appeal*

Objio's appeal has two components. First, he attempts in a single, rather unilluminating, sentence to adopt Castro's arguments. Second, he raises a new matter, contending that the evidence was insufficient to support his conviction on the firearms charge.[6]

#### A.

#### *Adoption of a Co–Appellant's Arguments*

■■■ The Appellate Rules provide in pertinent part:

> In cases involving more than one appellant or appellee ... any appellant or appellee may adopt by reference any part of the brief of another.

Fed.R.App.P. 28(i). Notwithstanding the permissive generalities in which the rule is couched, there are definite limits on the ability of parties to adopt each other's appellate arguments by reference. One such limit is that "the arguments adopted must be readily transferrable from the proponent's case to the adopter's case." *United States v. David*, 940 F.2d 722, 737 (1st Cir.1991), *certs. denied*, —— U.S. ——, ——, 112 S.Ct. 605, 908, 116 L.Ed.2d 628, 809, & —— U.S. ——, 112 S.Ct. 1298, 117 L.Ed.2d 520 (1992); *accord United States v. Isabel*, 945 F.2d 1193, 1200 (1st Cir.1991). That criterion was not fulfilled here.

The government's theory of the case portrayed Castro as the courier who transported the cocaine from the Dominican Republic to Puerto Rico. Conversely, the government's theory envisioned Objio, a resident of Puerto Rico and the immediate recipient of the contraband, as the local dealer (or dealer's representative). Given this disparity in the appellants' roles, and the nature of Castro's defense (absence of scienter), the sufficiency of the evidence in one case tells very little about the sufficiency of the evidence in the other case. For this reason, Objio's attempt to adopt Castro's arguments by a passing reference "does not adequately develop or preserve the issue[s] with respect to his own appeal." *David*, 940 F.2d at 737.

We hold, therefore, that Objio has failed to perfect a challenge to the sufficiency of the prosecution's case on the three drug trafficking counts. *See, e.g., United States v. Zannino*, 895 F.2d 1, 17 (1st Cir.) (it is a "settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"), *cert. denied*, 494 U.S. 1082, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990).

#### B.

#### *The Firearms Charge*

■■■ The facts relevant to the firearms charge are largely uncontradicted. The police discovered an unloaded gun within a briefcase in the locked trunk of Objio's car—the same car in which he transported Castro to the airstrip to retrieve the cocaine. Objio's assignment of error boils down to the notion that, given this scenario, a rational jury could not have concluded that he "use[d] or carrie[d]" the weapon "during and in relation to any ... drug trafficking crime." 18 U.S.C. § 924(c)(1). In developing this thesis, Objio emphasizes several factors: the gun was beyond his immediate reach; it was empty; and it was never flaunted or put to use in the unfolding transaction. Moreover, his reason for possessing the weapon—self-protection— was unrelated to, or at least not directly related to, the narcotics trade.

---

6. Although the record is tenebrous as to whether Objio preserved this point for appellate re-

view, we will assume, for argument's sake, that the error was properly preserved.

We are not strangers to argumentation of this stripe. While we have disclaimed any requirement that a weapon must be brandished, displayed, or discharged to sustain a conviction under section 924(c)(1), *see United States v. Plummer*, 964 F.2d 1251, 1255 (1st Cir.1992), we have simultaneously recognized that mere possession of a firearm during a criminal episode does not satisfy the elements of the statute. *See United States v. Payero*, 888 F.2d 928, 929–30 (1st Cir.1989). Rather, there must be some facilitative nexus between the weapon and the criminal activity. *See id.* at 929. However, facilitation of the crime need not be the defendant's sole purpose for possessing the weapon. If a gun is possessed for some other, perhaps legitimate, purpose, an intent to have it available for possible use in connection with, say, a drug deal, or as a device to lend courage during such a transaction, will suffice to invoke the statute. *See id.*

In *United States v. Hadfield*, 918 F.2d 987, 998 (1st Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 2062, 114 L.Ed.2d 466 (1991), a section 924(c)(1) case, we made it pellucidly clear that where a drug trafficker is not carrying a gun on his person, but has one nearby, the court's critical concern is not whether the gun was "instantly available" or "exclusively dedicated to the narcotics trade," but whether it was "available for use" in connection with the narcotics trade. We think the case at hand is largely governed by this tenet.

■ Objio was apprehended in his car, at the scene of a drug pickup, with the gun inside the car's trunk. Applying the *Hadfield* standard, we believe a rational jury was free to conclude that the location of the firearm—near a large sum of cash, in close proximity to live ammunition, and at a place where drugs were to be delivered—coupled with the timing—Objio brought the gun to the airstrip in the course of taking delivery of a sizable quantity of cocaine—supported a finding that the firearm was "available for use" during and in relation to the drug trafficking crime. *See generally United States v. Ingraham*, 832 F.2d 229, 240 (1st Cir.1987) ("The law is not so struthious as to compel a criminal jury to ignore that which is perfectly obvious."), *cert. denied,* 486 U.S. 1009, 108 S.Ct. 1738, 100 L.Ed.2d 202 (1988). To cinch matters, the case law makes it plain that Objio's conviction on court 4 was fully supportable. *See, e.g., Plummer*, 964 F.2d at 1253–54 (presence of unloaded gun and separately stored ammunition in defendant's vehicle was sufficient to convict under section 924(c)(1)); *United States v. Eaton*, 890 F.2d 511, 512 (1st Cir.1989) (similar; firearm was in defendant's vehicle), *cert. denied,* 495 U.S. 906, 110 S.Ct. 1927, 109 L.Ed.2d 291 (1990); *see also United States v. Wilkinson*, 926 F.2d 22, 25 (1st Cir.) (fact that drugs and gun were in the same bag supported conclusion that defendant had control over gun and that gun facilitated the crime), *cert. denied,* — U.S. —, 111 S.Ct. 2813, 115 L.Ed.2d 985 (1991); *United States v. Beverly*, 921 F.2d 559, 561–63 (5th Cir.) (unloaded guns and ammunition found in safety deposit box underneath a mattress in a room where drugs were also found; evidence sufficient to convict), *cert. denied,* — U.S. —, 111 S.Ct. 2869, 115 L.Ed.2d 1035 (1991); *United States v. Martinez*, 912 F.2d 419, 420–21 (10th Cir.1990) (similar; briefcase containing an unloaded gun, currency, and cocaine found in defendant's bedroom); *United States v. Alvarado*, 882 F.2d 645, 654 (2d Cir.1989) (similar; weapons and cash found in a locked safe), *cert. denied,* 493 U.S. 1071, 110 S.Ct. 1114, 107 L.Ed.2d 1021 (1990).

In sum, taking the proof in the light most hospitable to the verdict, the jury was entitled to conclude that a facilitative nexus existed between the weapon and the ongoing criminal activity. That being so, the evidence on count 4 was adequate to sustain Objio's conviction.

## IV.

### Conclusion

■ We need go no further.[7] Our review of the record leaves no doubt but that

---

**7.** Although we see no sign that a shortfall occurred, we nevertheless decline to consider Cas-

both defendants were fairly tried and justly convicted. Their assignments of error are devoid of merit. The judgments below must therefore be

*Affirmed.*

tro's newly emergent claim that he was deprived of the effective assistance of counsel during the trial. "The rule in this circuit is that a fact-specific claim of ineffective legal assistance can-not be raised initially on direct review of a criminal conviction, but must originally be presented to the district court." *Hunnewell,* 891 F.2d at 956.