**UNITED STATES, Appellee,**

v.

**Domingo REYES–MERCADO, Defendant, Appellant.**

**No. 93–1904.**

United States Court of Appeals, First Circuit.

Heard March 8, 1994.

Decided April 28, 1994.

---

Jose A. Fuentes Agostini with whom Dominguez & Totti, Hato Rey, PR, was on brief, for appellant.

Jorge E. Vega–Pacheco, Asst. U.S. Atty., with whom Guillermo Gill, U.S. Atty., Hato Rey, PR, was on brief, for appellee.

Before SELYA, Circuit Judge, BOWNES, Senior Circuit Judge, and STAHL, Circuit Judge.

STAHL, Circuit Judge.

After being convicted and sentenced on various drug and firearms charges, defendant-appellant Domingo Reyes–Mercado argues that the district court erred in 1) denying his motion to suppress evidence; 2) determining that the evidence presented at trial was sufficient to convict him; and 3) ruling that it had no power to credit him for time served under home confinement. Finding no error, we affirm.

## I.

### FACTUAL BACKGROUND AND PRIOR PROCEEDINGS

For purposes of defendant's challenge to the sufficiency of the evidence, we review the facts in a light most favorable to the government. *United States v. Torres–Maldonado*, 14 F.3d 95, 98 (1st Cir.1994).

Sometime in mid-June of 1992 in Cartagena, Colombia, a confidential government informant (hereinafter "CI") working on a ship was provided with four kilograms of cocaine and instructed to contact defendant upon the ship's arrival in Ponce, Puerto Rico. On arrival in Ponce on June 17, 1992, the CI telephoned defendant. With codefendant Rolando Lopez–Maysonet acting as inter-preter, defendant agreed to buy four kilograms of cocaine from the CI. The purchase was arranged to take place that same day, June 17, 1992, at a shopping center phone booth. Upon defendant's arrival in a black Nissan Pathfinder, the CI entered the vehicle and sold four kilograms of cocaine to defendant and Lopez–Maysonet. On a signal from the CI, United States Customs Service agents surrounded the vehicle, placed defendant and Lopez–Maysonet under arrest, and conducted a search of the Pathfinder's interior.

In the search, the agents found two handbags containing money, two cellular telephones, and one carry-on bag containing four kilograms of cocaine. Pursuant to established procedures, United States Customs Agent Jose Ruiz and Marine Enforcement Officer Radames Sanchez then impounded the car and conducted an inventory search. During the inventory search of the vehicle, the agents found in the glove box a loaded Ruger pistol with an obliterated serial number.

On June 29, 1992, just days after his arrest, the district court ordered, *inter alia*, that pending trial, defendant remain confined at home wearing an electronic surveillance bracelet. Shortly thereafter, defendant was charged in a five-count indictment. Three of the counts related solely to drug violations. Defendant pled guilty to these three counts.[1] The remaining two counts charged defendant with 1) carrying a firearm in relation to the commission of a drug offense in violation of 18 U.S.C. § 924(c)(1)[2]; and 2) possession of a firearm having been transported in interstate commerce and whose manufacturer's serial number had been obliterated in viola-

---

1. The three drug counts stated that defendant and Lopez–Maysonet 1) conspired to import in excess of 4500 grams of cocaine in violation of 21 U.S.C. §§ 952(a), 960, and 963, 2) aided and abetted each other in possessing with an intent to distribute in excess of 4500 grams of cocaine in violation of 18 U.S.C. § 2, and 21 U.S.C. § 841(a)(1); and 3) aided and abetted each other in the use of a communication facility, i.e., a telephone, for causing or facilitating the possession with intent to distribute cocaine, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 843(b).

2. Section 924(c)(1) provides in relevant part:

Whoever, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime or violence or drug trafficking crime, be sentenced to imprisonment for five years.

tion of 18 U.S.C. § 922(k)[3].

Defendant pled not guilty to both firearms charges. Prior to trial, a suppression hearing took place before a magistrate judge at which defendant argued that the gun found in the inventory search should be suppressed. More specifically, defendant argued that the government's evidence conflicted as to whether the gun was first discovered in the inventory search, or whether it had been discovered at the scene of the arrest. Seizing on this inconsistency, defendant argued that the gun had, in fact, been discovered at the time of the arrest, and, further, that this discovery of the gun was unlawful. The magistrate considered the government's conflicting evidence, determined that the gun had been lawfully discovered in the inventory search, and denied the motion to suppress. At trial, a jury convicted defendant on both firearms counts, and this appeal followed.

## II.

### DISCUSSION

Defendant argues that 1) the lower court erred in denying defendant's motion to suppress the gun; 2) the evidence presented at trial was insufficient to convict defendant on the weapons charges; and 3) the lower court erred in determining that it had no power to grant the appellant credit for the time he had served in home confinement. We address these arguments in turn.

### A. Suppression of the Gun

■ In arguing that the gun should have been suppressed, defendant begins by challenging the facts as found by the magistrate judge at the suppression hearing. In essence, defendant argues that the gun was not discovered in the inventory search, but rather that it was discovered at the scene of the arrest in an unlawful search of the glove compartment.

■ Where the lower court judge sits as the factfinder, we uphold findings of fact unless they are clearly erroneous. *United States v. Mancini*, 8 F.3d 104, 107 (1st Cir. 1993). Moreover, where there are two permissible views of the evidence, the interpretation assigned by the lower court must be adopted. *Williams v. Poulos*, 11 F.3d 271, 278 (1st Cir.1993).

In the instant case, Sanchez, the Marine Enforcement Officer present at the arrest, testified at a preliminary detention hearing that the gun was first discovered at the scene of the arrest. Customs Agent Ruiz, on the other hand, who was also present at the arrest, testified at the suppression hearing that the weapon was seized from the Pathfinder during the inventory search. The magistrate judge, apparently crediting Ruiz's testimony, expressly found that the gun was first found during the inventory search. Defendant cites nothing in the record to indicate that this credibility determination was clearly erroneous. Accordingly, we find no error in the lower court's determination that the gun was discovered during the inventory search. Moreover, defendant concedes the validity of the inventory search. *Cf. United States v. Zapata*, 18 F.3d 971, 978 (1st Cir.1994) ("Courts have regularly approved inventory searches of impounded motor vehicles despite the absence of probable cause."). Thus, we find no error in the district court's denial of defendant's motion to suppress the gun.[4]

3. Section 922(k) provides in relevant part:
 It shall be unlawful for any person ... to possess or receive any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered and has, at any time, been shipped or transported in interstate or foreign commerce.

4. We note additionally that even if the gun was first discovered at the scene of the arrest, the evidence in the record before us shows that a search of the glove compartment incident to defendant's arrest would have been lawful. *See New York v. Belton*, 453 U.S. 454, 460–61 & n. 4,

101 S.Ct. 2860, 2864–65 & n. 4, 69 L.Ed.2d 768 (holding that after policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, "examine the contents of any containers," including glove compartments, found within the passenger compartment). Moreover, given that defendant concedes the validity of the inventory search, it appears that the suppression would be inappropriate, inasmuch as the gun would inevitably have been lawfully discovered. *See, e.g., Zapata*, 18 F.3d at 978–79 (discussing generally the doctrine of inevitable discovery).

*B. Sufficiency of the Evidence*

■ When reviewing a sufficiency of the evidence challenge, we examine the evidence in the light most favorable to the government and affirm convictions where a rational juror could have found guilt beyond a reasonable doubt. *United States v. Jadusingh,* 12 F.3d 1162, 1168 (1st Cir.1994).

■ Under section 924(c)(1), the government must show that the defendant used one or more firearms during and in relation to a drug trafficking offense. *United States v. Hadfield,* 918 F.2d 987, 996 (1st Cir.1990), *cert. denied,* 500 U.S. 936, 111 S.Ct. 2062, 114 L.Ed.2d 466 (1991). Use, as described in section 924(c)(1), calls for something more than "possession." *See United States v. McFadden,* 13 F.3d 463, 465 (1st Cir.1994). While a weapon need not be brandished, displayed or discharged in order to sustain a conviction under section 924(c)(1), there must be some facilitative nexus between the weapon and the criminal activity. *See Torres–Maldonado,* 14 F.3d at 102; *United States v. Castro–Lara,* 970 F.2d 976, 983 (1st Cir. 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2935, 124 L.Ed.2d 684 (1993); *United States v. Plummer,* 964 F.2d 1251, 1253–55 (1st Cir.), *cert. denied* —— U.S. ——, 113 S.Ct. 350, 121 L.Ed.2d 265 (1992). "[A] conviction will be sustained under [section 924(c) ] if the possessor of a weapon intended to have it available for possible use during or immediately following the transaction, or if it facilitated the transaction by lending courage to the possessor." *Id.* 964 F.2d at 1254 (quoting *United States v. Payero,* 888 F.2d 928, 929 (1st Cir.1989)). "[U]ltimately, whether or not the gun[ ] helped [a defendant] commit the drug crime is a matter for a jury, applying common-sense theories of human nature and causation." *McFadden,* 13 F.3d at 466 (quoting *United States v. Wilkinson,* 926 F.2d 22, 26 (1st Cir.), *cert. denied,* 501 U.S. 1211, 111 S.Ct. 2813, 115 L.Ed.2d 985 (1991)).

■ When viewed in the light most favorable to the government, the evidence shows that a reasonable jury could find beyond a reasonable doubt that defendant used the gun in connection with a drug crime as required by section 924(c). First, the Pathfinder belonged to and was registered to defendant. Second, throughout the consummation of the drug deal, which took place inside the Pathfinder, the loaded gun was located in the glove compartment directly in front of the passenger seat where defendant was seated. Finally, the jury heard ample testimony from Agent Ruiz regarding the details of defendant's involvement in the cocaine transaction. This testimony described the plan devised in Colombia to deliver the cocaine to defendant in Ponce, Puerto Rico. Based on this evidence, the jury could conclude that the gun was present by design, rather than happenstance, and that it was used by defendant in connection with the drug purchase as required by section 924(c).[5]

*C. The Sentencing Court's Ability to Consider Home Confinement Toward a Reduction in Sentence*

■ Finally, defendant contends that the sentencing court erred by concluding that it had no power to grant him credit for the time he served under home confinement.[6] We disagree.

Under 18 U.S.C. § 3585, "[a] defendant will receive credit towards the sentence of imprisonment for any time he has spent in official custody prior to the date the sentence commences." In a similar case, *United States v. Zackular,* 945 F.2d 423, 425 (1st Cir.1991), we stated, "We do not believe that the official detention requirement of section 3585 can be fulfilled by home confinement." *Id.* Rather, "the fact that home confinement is included as a condition of probation, but not as a substitute for incarceration, persuasively indicates that Congress considered home confinement not to be the equivalent of immurement, ergo, not to come within the

---

5. The very evidence supporting defendant's conviction under section 924(c) also supports his conviction under section 922(k).

6. The record reflects that defendant eventually broke the conditions of his home confinement and that he was subsequently incarcerated pending trial.

ambit of 'official detention.' " *Id.*[7]

Therefore, under the clear precedent of this circuit, the district court properly concluded that it did not have the power to credit defendant for time served under home confinement.

## III.

## CONCLUSION

For the foregoing reasons, defendant's conviction and sentence are

*Affirmed.*

---

**7.** Since we decided *Zackular,* the Supreme Court has held in *United States v. Wilson,* —— U.S. ——, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992), that, in the first instance, credit under section 3585 must be calculated by the Attorney General. *Id.* —— U.S. at ——, 112 S.Ct. at 1354. As far as the record before us reflects, no such calculation was requested or made here. Despite defendant's failure to exhaust administrative remedies, we reaffirm that part of *Zackular* which holds that pretrial home confinement may not be credited toward "official detention." *Cf. Fraley v. United States Bureau of Prisons,* 1 F.3d 924, 925–26 (9th Cir.1993) (holding that home confinement may not be credited toward official detention).