UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 94-1370

UNITED STATES,

Appellee,

v.

FRANK NIEVES-BURGOS,

Defendant - Appellant.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Raymond L. Acosta, Senior U.S. District Judge] 



Before

Torruella, Chief Judge, 

Boudin, Circuit Judge, 

and Boyle,* Senior District Judge. 



Juan R. Acevedo-Cruz, by Appointment of the Court, for 
appellant.
John F. DePue, Attorney, Department of Justice, with whom 
Guillermo Gil, United States Attorney, Warren V zquez, Assistant 
United States Attorney, and Nina Goodman, Attorney, Department of 
Justice, were on brief for appellee.



August 14, 1995

 

* Of the District of Rhode Island, sitting by designation. 

BOYLE, Senior District Judge. This case presents two BOYLE, Senior District Judge. 

issues concerning the conviction of the appellant, Frank Nieves-

Burgos, for use of a firearm during a drug-trafficking offense in

violation of 18 U.S.C. 924(c)(1). Nieves-Burgos asserts,

first, that the jury's general verdict of guilty on the firearm

charge is ambiguous and must be set aside, as it was returned on

a single charge containing three alleged violations, two of which

were not supported by the evidence at trial. Second, Nieves-

Burgos asserts that the only alleged violation supported by

evidence at trial was itself not supported by sufficient

evidence. We conclude that the jury verdict is not ambiguous and

is adequately supported by the evidence, and we affirm.

I. BACKGROUND I. BACKGROUND

The factual background of this appeal is set forth in

United States v. Torres-Maldonado, 14 F.3d 95, 98-100 (1st Cir.), 

cert. denied, 115 S. Ct. 193 (1994), an appeal taken by Nieves- 

Burgos' co-defendants. We therefore recount the relevant facts,

which for the most part are not disputed, only briefly, and, as

is appropriate, we do so in the light most favorable to the

verdict. See United States v. Torres-Maldonado, 14 F.3d 95, 98 

(1st Cir.), cert. denied, 115 S. Ct. 193 (1994). 

In February 1991, Nieves-Burgos and several others

rented rooms 310, 311, and 327 of the Carib Inn Hotel in Isla

Verde, Puerto Rico. Nieves-Burgos rented room 311 using a false

name. The group occupied the rooms for several weeks. On March

6, 1991, hotel security personnel notified police of suspicious

-2-

conduct in the three rooms. There had been frequent traffic to,

from, and between the rooms; the three rooms received 90% of the

hotel's incoming telephone calls; the rooms often were paid for

together, in cash; and, a hotel floor supervisor observed two

handguns on a bureau in room 327.

Agents of the United States Bureau of Alcohol, Tobacco,

and Firearms (ATF) began surveillance of the hotel on March 6.

At approximately 11:00 p.m. that evening, they observed Nieves-

Burgos, H ctor Santiago-Alicea, Teddy Le n-Ayala, Oscar D az-

Cruz, and an unidentified man in the hotel lobby. The agents

observed Santiago-Alicea wearing a bullet-proof jacket, which was

bulging from something concealed underneath. The group proceeded

outside the hotel to a parking lot, where the unidentified man

produced a bag and handed it to Santiago-Alicea.

Later that same evening, another unidentified man

arrived at the hotel, and was met by Nieves-Burgos and Pedro Luis

Ram rez-Rivera (Ram rez-Rivera). After a brief conversation,

Nieves-Burgos and Ram rez-Rivera left the unidentified man. They

returned a short while later with Santiago-Alicea, who exchanged

packages with the unidentified man.

On March 7, 1991, ATF agents executed a search warrant

at the three hotel rooms. In room 311, they found five persons:

Nieves-Burgos, Marilyn Gotay-Col n, Catalino Torres-Maldonado,

Ram rez-Rivera, and Santiago-Alicea. Nieves-Burgos was on one of

the room's two beds, clad in his underwear. A search of the room

revealed quantities of cocaine, several bundles of cash, various

-3-

instruments and supplies typically used for packaging cocaine, a

bullet-proof jacket, and a loaded Beretta semi-automatic handgun.

The gun was found with a bundle of cash in a zippered bag on a

sofa on which Gotay-Col n was seated. The bag was located less

than two feet from Nieves-Burgos.

Rooms 310 and 327 were also searched, as were two cars

that were in the hotel's parking lot. More cocaine and

paraphernalia were found in the two rooms. Guns were found in

the two cars. In a green Ford LTD, agents found a loaded .357

revolver; also found were a picture of Nieves-Burgos and a

parking ticket on which was Nieves-Burgos' fingerprint. In a

grey Buick, a nine-millimeter pistol was found. The Buick's

registration certificate was found in Santiago-Alicea's wallet.

Nieves-Burgos and others were indicted. In counts one

and two of the indictment, Nieves-Burgos and others were charged

with possessing with the intent to distribute, and conspiring to

possess with the intent to distribute, cocaine. Count four1
 

1 Count four provides in full:

On or about March 7, 1991, in the
District of Puerto Rico and within the
jurisdiction of this Court, FRANKIE FRANKIE
NIEVES-BURGOS, also known as KENNY NIEVES-BURGOS, also known as KENNY
RAMIREZ, also known as JOSE HERRERA- RAMIREZ, also known as JOSE HERRERA-
RIVERA, PEDRO LUIS RAMIREZ-RIVERA, also RIVERA, PEDRO LUIS RAMIREZ-RIVERA, also
known as PEDRO MEDINA-RIVERA, CATALINO known as PEDRO MEDINA-RIVERA, CATALINO
TORRES-MALDONADO, MARILYN GOTAY-COLON, TORRES-MALDONADO, MARILYN GOTAY-COLON,
HECTOR SANTIAGO-ALICEA, TEDDY LEON-AYALA, HECTOR SANTIAGO-ALICEA, TEDDY LEON-AYALA,
and OSCAR DIAZ-CRUZ, also known as OSCAR and OSCAR DIAZ-CRUZ, also known as OSCAR
SANTIAGO, the defendants herein, aiding SANTIAGO
and abetting each other, did knowingly
and unlawfully use three (3) firearms of
the following descriptions:

-4-

charged Nieves-Burgos and five others with the knowing unlawful

use of three firearms during and in relation to a drug

trafficking crime in violation of 18 U.S.C. 924(c)(1).2 The
 

(a) Beretta semi-automatic pistol
caliber 9mm., Model 92-F, black in color,
serial number BER042822Z loaded with
ammunition of its own [sic];
(b) Smith and Wesson Revolver,
caliber .357 magnum; Model 27-2, three
and one half (3 1/2) inch barrel, nickel
plated in color with brown grip, serial
number N109155; loaded with ammunition of
its own caliber;
(c) Norinco semi-automatic pistol,
caliber 9mm., Model L213, black in color,
serial number 315202, loaded with
ammunition of its own caliber; during and
in relation to the commission of an
offense punishable under the Drug Abuse
Prevention and Control Act, that is, a
violation of Title 21, United States
Code, Section 841(a)(1), involving the
Schedule II Narcotic Drug Controlled
Substance cocaine, as defined in Title
18, United States Code, Section
924(c)(1), which may be prosecuted in a
Court of the United States, to wit:
aiding and abetting each other in the
possession with intent to distribute of
approximately nine hundred fifty-six
point one (956.1) grams (gross weight) of
cocaine, a Schedule II Narcotic Drug
Controlled Substance; all in violation of
Title 18, United States Code, Section
924(c)(1).

2 18 U.S.C. 924(c)(1) provides in part:

Whoever, during and in relation to any
crime of violence or drug trafficking
crime (including a crime of violence or
drug trafficking crime which provides for
an enhanced punishment if committed by
the use of a deadly or dangerous weapon
or device) for which he may be prosecuted
in a court of the United States, uses or
carries a firearm, shall, in addition to
the punishment provided for such crime of

-5-

firearms alleged in count four to have been used in violation of

924(c)(1) are the three handguns found in room 311 of the hotel

and the two cars searched in the hotel parking lot.

Evidence of the three firearms was presented at trial.

At the close of the evidence, the trial judge instructed the jury

without objection and presented them with a copy of the

indictment for their deliberation. As to Nieves-Burgos, the jury

returned general verdicts of guilty on counts one, two, and four.

Nieves-Burgos took no appeal from the guilty verdict or

his sentence. Upon his imprisonment, he filed a motion to vacate

his sentence under 28 U.S.C. 2255, claiming ineffective

assistance of counsel. His motion was granted, and he was

afforded new counsel for resentencing. On count four, he was

sentenced to sixty months' imprisonment, to run consecutive to

his sentences on the other two counts.

Nieves-Burgos now appeals the guilty verdict on count

four. He asserts that the evidence was not sufficient to support

his conviction as to any of the three firearms. The United

States argues in response that the evidence of the firearm found

in room 311 was sufficient to support the conviction. The

government expressly declines to argue that evidence concerning

either of the two firearms found in the automobiles was  

sufficient to support the conviction.3 During argument, the violence or drug trafficking crime, be
sentenced to imprisonment for five years
. . . .

3 In its brief, the government states: "The government does not
argue that Nieves-Burgos' conviction under Section 924(c)(1) is
supported by [evidence of] the two guns found during the searches
of the cars." Government's Brief at 7 n.5.

-6-

parties were asked to submit supplemental briefs concerning the

issue whether the general verdict of guilty should stand where it

was returned on a count containing three alleged violations of

the firearms statute, two of which concededly were unsupported by

evidence at trial. The parties' arguments were received and

considered. We address the issues.

II. ANALYSIS II. ANALYSIS

A. The General Verdict A. The General Verdict 

Nieves-Burgos initially argues that his conviction for

violation of 18 U.S.C. 924(c)(1) cannot stand as the jury's

general verdict of guilty was ambiguous in that it was returned

on a charge that alleged the use of three firearms in violation

of 18 U.S.C. 924(c)(1), and the evidence at trial was not

sufficient to support a conviction as to two of the firearms.

The government concedes that the evidence at trial did not

support a conviction as to two of the three firearms listed in

count four, but argues that the verdict should stand as it is

supported by sufficient evidence as to the remaining firearm.

This issue was effectively determined in Griffin v. 

United States, 502 U.S. 46 (1991). In Griffin, the appellant had 

been convicted by jury of an unlawful conspiracy in violation of

18 U.S.C. 371. See Griffin v. United States, 502 U.S. 46, 47 

(1991). A single count in the indictment charged that the

conspiracy had two unlawful objects: impeding efforts of the

Internal Revenue Service to ascertain income taxes; and impeding

efforts of the Drug Enforcement Administration to ascertain

-7-

forfeitable income. See id. The evidence presented at trial 

failed to establish the appellant's guilt with respect to the

second object. See id. at 47-48. The trial court's instructions 

to the jury permitted them to return a guilty verdict if they

found the appellant to have participated in either of the two

objects of the conspiracy. See id. at 48. The jury returned a 

general verdict of guilty. See id. The Court affirmed the 

verdict, citing the rule that when a jury returns a general

verdict of guilty on a single count charging more than one

criminal act, the verdict stands if the evidence sufficiently

supports any of the acts charged. See id. at 56-57 (citing 

Turner v. United States, 396 U.S. 398, 420 (1970)).  

Griffin provides what was a much-needed clarification 

of the law. Prior to Griffin, Supreme Court authority appeared 

somewhat disjointed, if not downright contradictory. Compare 

Turner v. United States, 396 U.S. at 420 ("The general rule is 

that when a jury returns a guilty verdict on an indictment

charging several acts in the conjunctive . . . the verdict stands

if the evidence is sufficient with respect to any one of the acts

charged.") with Yates v. United States, 354 U.S. 298, 312 

(1957)("[W]e think the proper rule to be applied is that which

requires a verdict to be set aside in cases where the verdict is

supportable on one ground, but not on another, and it is

impossible to tell which ground the jury selected."). In

Griffin, the Court articulated subtle distinctions between the 

lines of relevant cases, seeking to reconcile them. See Griffin 

-8-

v. United States, 502 U.S. at 52-56. It is appropriate briefly 

to discuss the Supreme Court's analysis in Griffin before we 

address the issue as it relates to this case.

In Griffin, the Court discussed the long-recognized 

general rule: "a general jury verdict [is] valid so long as it

[is] legally supportable on one of the submitted grounds -- even

though [this gives] no assurance that a valid ground, rather than

an invalid one, was actually the basis for the jury's action."

Id. at 49. The Court acknowledged that this doctrine has been 

settled law throughout this country's existence. See id. 

Indeed, the rule was declared by Lord Mansfield at King's Bench

before the Declaration of Independence: "if there is any one

count to support the verdict, it shall stand good,

notwithstanding all the rest are bad." Peake v. Oldham, 1 Cowper 

275, 276, 98 Eng.Rep. 1083, 1084 (K.B. 1775), quoted in Claasen 

v. United States, 142 U.S. 140, 146 (1891), quoted in Griffin v. 

United States, 502 U.S. at 49-50. The rule, Griffin notes, was 

more recently followed in Turner v. United States, 396 U.S. 398, 

420 (1970). In Turner, the appellant had been charged in a 

single count with knowingly not only purchasing, but also

dispensing and distributing heroin in violation of Federal law,

and the jury returned a general verdict of guilty on the charge.

Turner v. United States, 396 U.S. at 419-20. The Court concluded 

that, because the evidence at trial was sufficient to support the

contention that the appellant had distributed heroin in violation

of the relevant statute, the verdict should be upheld, whether or

-9-

not the evidence was sufficient to support the other conjunctive

allegations in the count. See id. at 420-21. The Court relied 

on what it labeled the "general rule" on the issue: "when a jury

returns a guilty verdict on an indictment charging several acts

in the conjunctive . . . the verdict stands if the evidence is

sufficient with respect to any one of the acts charged." Id. at 

420, quoted in Griffin v. United States, 502 U.S. at 56-57. See 

also Turner v. United States, 396 U.S. at 420 & n.42, and cases 

cited.

The primary exception to the general rule, Griffin 

recognizes, finds its roots in Stromberg v. California, 283 U.S. 

359 (1931). See Griffin v. United States, 502 U.S. at 52. In 

Stromberg, the appellant had been charged in a single count of an 

information of violating a California statute prohibiting the

display of a red flag for any of three purposes: "as a sign,

symbol or emblem of opposition to organized government[;] or as

an invitation or stimulus to anarchistic action[;] or as an aid

to propaganda that is of a seditious character." Stromberg v. 

California, 283 U.S. 359, 361 (1931) (citation omitted). The 

Court determined that the first of the statute's three clauses

violates the Fourteenth Amendment. See id. at 369-70. In 

setting aside the jury's general verdict, it stated: "[I]f any

of the clauses in question is invalid under the Federal

Constitution, the conviction cannot be upheld." Id. at 368, 

quoted in Griffin v. United States, 502 U.S. at 53. The rule of 

Stromberg thereafter was applied in many cases involving 

-10-

"general-verdict convictions that may have rested on an

unconstitutional ground." See Griffin v. United States, 502 U.S. 

at 55, and cases cited.

In Yates v. United States, 354 U.S. 298 (1957), the 

Court extended the rule of Stromberg, and in doing so, created 

some confusion. Yates concerns the convictions of numerous 

appellants on a single-count indictment charging them with

violating a California statute by conspiring for two unlawful

purposes: (1) advocating the violent overthrow of the

government; and (2) organizing the Communist Party of the United

States. See Yates v. United States, 354 U.S. at 300. The Court 

determined that the "organizing" charge was prohibited by the

relevant statute of limitations. See id. at 312. The Court 

held: "In these circumstances we think the proper rule to be

applied is that which requires a verdict to be set aside in cases

where the verdict is supportable on one ground, but not on

another, and it is impossible to tell which ground the jury

selected." Id. (citing Stromberg v. California, 283 U.S. at 367- 

68; Williams v. North Carolina, 317 U.S. 287, 292 (1942); Cramer 

v. United States, 325 U.S. 1, 36 n.45 (1945)).  

As the Court acknowledged in Griffin, Yates constitutes 

a novel and unexplained extension of the Stromberg rule: 

Yates . . . was the first and only case 

of ours to apply Stromberg to a general 

verdict in which one of the possible

bases of conviction did not violate any

-11-

provision of the Constitution but was

simply legally inadequate (because of a

statutory time bar). As we have

described, that was an unexplained

extension, explicitly invoking neither

the Due Process Clause (which is an

unlikely basis) nor our supervisory

powers over the procedures employed in a

federal prosecution.

Griffin v. United States, 502 U.S. at 55-56. Griffin notes that 

none of the three cases cited in Yates to support its holding -- 

Stromberg and two of its progeny, Williams v. North Carolina, 317 

U.S. 287, 292 (1942), and Cramer v. United States, 325 U.S. 1, 36 

n.45 (1945) -- in fact supports it. See Griffin v. United 

States, 502 U.S. at 52, 54-55.  

Griffin clarifies Yates by explaining that it extends 

only to cases in which one of the possible bases of conviction

was legally erroneous. See id. at 51-52. Griffin distinguishes 

cases, like Turner, which concern convictions that may have 

rested on a basis that was not supported by the evidence, from

those concerning convictions possibly resting on an invalid

ground as a result of an error of law. See id. at 58-59. It 

explains:

In one sense "legal error" includes

inadequacy of evidence -- namely, when

the phrase is used as a term of art to

-12-

designate those mistakes that it is the

business of judges (in jury cases) and of

appellate courts to identify and correct.

In this sense "legal error" occurs when a

jury, properly instructed as to the law,

convicts on the basis of evidence that no

reasonable person could regard as

sufficient. But in another sense -- a 

more natural and less artful sense -- the 

term "legal error" means a mistake about 

the law, as opposed to a mistake 

concerning the weight or the factual 

import of the evidence. . . . [W]e are 

using "legal error" in the latter sense.

Id. at 59 (emphasis added). 

Here, Nieves-Burgos asserts, and the government

concedes, that there was insufficient evidence presented at trial

to support the firearms conviction with respect to two of the

three guns listed in the charge, that is, the two guns found in

the cars. Turner and Griffin tell us quite clearly that Nieves- 

Burgos' verdict shall not be set aside on this basis alone.

Rather, the verdict must stand so long as it is sufficiently

supported by the evidence concerning the third firearm. We

therefore must determine whether the evidence sufficiently

supports Nieves-Burgos' conviction under 18 U.S.C. 924(c)(1) as

to the firearm found in room 311.

-13-

Before we move on, however, we acknowledge that, before

Griffin, Yates appeared to set forth a rule that differed, if not 

conflicted, with the long-standing general rule recognized in

Turner. Prior to Griffin, we cited authority relying on Yates in 

support of the proposition that a general verdict returned on a

charge asserting numerous grounds for conviction must be vacated

where one or more of the grounds is insufficiently supported by

the evidence and it is unclear whether the jury relied on the

insufficient ground. See United States v. Moynagh, 566 F.2d 799, 

804 (1st Cir. 1977), cert. denied, 435 U.S. 917 (1978) (citing 

United States v. Natelli, 527 F.2d 311, 325 (2d Cir. 1975), cert. 

denied, 425 U.S. 934 (1976) (citing Yates v. United States, 354 

U.S. 298)) ("We conclude that Moynagh's conviction on these

counts cannot be sustained because each count contains a

specification charging concealment . . . and no evidence was

introduced which supports any fraudulent concealment . . . .").

Griffin renders this proposition unsound.4 

We note that this type of issue may, in proper

circumstances, be avoided: "[I]f the evidence is insufficient to

support an alternative legal theory of liability, it would

generally be preferable for the court to give an instruction

removing that theory from the jury's consideration." Griffin v. 

 

4 We have on numerous occasions cited Yates in accord with 
Griffin's interpretation of it. See, e.g., United States v. 
Ochs, 842 F.2d 515, 520 (1st Cir. 1988); United States v. 
Kavazanjian, 623 F.2d 730, 739-40 (1st Cir. 1980); United States 
v. Driscoll, 449 F.2d 894, 898 (1st Cir. 1971), cert. denied, 405 
U.S. 920 (1972).

-14-

United States, 502 U.S. at 60. Aside from attempting to "unring 

the bell," however, when there are alternative bases for

conviction, the trial court may be well advised to require a

proffer of the evidence linking a particular defendant with a

particular alternative. Also, the government should consider

avoiding alternative pleading altogether, or the trial court

might require each of the alternatives to be considered and

proved separately.

B. Sufficiency of the Evidence B. Sufficiency of the Evidence 

Nieves-Burgos argues that the evidence at trial was not

sufficient to support his conviction on count four for violation

of 18 U.S.C. 924(c)(1) as to the firearm found in room 311.

1. Standard of Review 1. Standard of Review

In reviewing challenges to the sufficiency of evidence,

"[o]ur task is to review the record to determine whether the

evidence and reasonable inferences therefrom, taken as a whole

and in the light most favorable to the prosecution, would allow a

rational jury to determine beyond a reasonable doubt that the

defendants were guilty as charged." United States v. Mena- 

Robles, 4 F.3d 1026, 1031 (1st Cir. 1993), cert. denied sub nom. 

Rivera v. United States, 114 S. Ct. 1550 (1994). We therefore 

resolve all credibility issues in favor of the verdict. See 

United States v. Torres-Maldonado, 14 F.3d at 100 (citation 

omitted). We acknowledge that a jury's determination need not be

grounded in direct evidence; rather it may be based wholly on

circumstantial evidence. See id. In addition, the evidence 

-15-

"'need not exclude every reasonable hypothesis of innocence; that

is, the factfinder may decide among reasonable interpretations of

the evidence.'" Id. (quoting United States v. Cassiere, 4 F.3d 

1006, 1011 (1st Cir. 1993) (citation omitted)). The court must

satisfy itself "that the guilty verdict finds support in 'a

plausible rendition of the record.'" United States v. Echeverri, 

982 F.2d 675, 677 (1st Cir. 1993) (quoting United States v. 

Ortiz, 966 F.2d 707, 711 (1st Cir. 1992), cert. denied, 113 S. 

Ct. 1005 (1993)).

2. Analysis 2. Analysis

Section 924(c)(1), 18 U.S.C., makes unlawful the "use"

of a firearm "during and in relation to" any Federal drug-

trafficking crime. 18 U.S.C. 924(c)(1).5 A conviction under

this section results in a mandatory sentence of imprisonment for

a term of at least five years. See id. Nieves-Burgos was 

convicted of using the firearm found in room 311 during and in

relation to the crime of possessing with the intent to distribute

the controlled substance cocaine.

We examine the evidence to determine, first,

appellant's possessory interest in the firearm at issue, see 

United States v. Torres-Maldonado, 14 F.3d at 102 (citing United 

States v. Harrison, 931 F.2d 65, 71 (D.C. Cir.), cert. denied, 

502 U.S. 593 (1991)) ("in order to establish that a defendant

'used' a firearm for purposes of section 924(c)(1), 'the

government must prove that the defendant actually or
 

5 See supra note 2. 

-16-

constructively possessed it'"), and, second, whether there exists

"some facilitative nexus between the weapon and the criminal

activity." United States v. Castro-Lara, 970 F.2d 976, 983 (1st 

Cir. 1992), cert. denied sub nom. Sarraff v. United States, 113 

S. Ct. 2935 (1993).

a. Possession a. Possession 

Nieves-Burgos is alleged to have been in constructive

possession of the gun found in room 311. Constructive possession

exists when a person "knowingly has the power and intention at a

given time to exercise dominion and control over [a firearm],

either directly or through others." United States v. Torres- 

Maldonado, 14 F.3d at 102.  

The evidence indicates, though not overwhelmingly, that

Nieves-Burgos was in constructive possession of the firearm found

in room 311. The evidence supports the existence of the

following facts: Nieves-Burgos rented and occupied room 311; he

was a direct participant in the drug distribution scheme; the gun

was found in a zippered bag, also containing $2,000 in cash, on a

couch in room 311; Nieves-Burgos was less than two feet from the

gun. Nieves-Burgos concedes in his brief that he "clearly was in

control of Room 311." A jury reasonably could infer from these

facts that the cash found in the bag that contained the gun was

drug trafficking proceeds, and that Nieves-Burgos, a principal in

the drug trafficking scheme who concededly was in control of the

room, had knowledge of what was in the bag, and, because of his

-17-

proximity to the gun, had the power and intention to exercise

dominion over it.

Clearly, there is evidence in the record that weighs

against this conclusion: no witness could link the gun or the

bag directly to Nieves-Burgos; the bag concealing the gun was

zippered; several co-defendants were found sitting within

several feet of the gun, and Gotay-Col n, who was seated on the

couch, may have been closer to the gun than was Nieves-Burgos.

Nonetheless, our role is not to weigh the evidence; we are merely

to ensure that some evidence exists to support sufficiently the

jury's determination. See United States v. Mena-Robles, 4 F.3d 

at 1031. Again, the evidence supports the inference that Nieves-

Burgos was in constructive possession of the gun: He concedes

that he "clearly was in control of Room 311"; he was a principal

with respect to the underlying offense of possession with intent

to distribute; and, he was found near -- less than two feet from

-- the gun.

This result is consistent with Torres-Maldonado, in 

which we concluded that the evidence at trial was insufficient to

establish that appellants Torres-Maldonado and Gotay-Col n were

in constructive possession of the gun found in room 311. See 

United States v. Torres-Maldonado, 14 F.3d at 102-03. We 

considered to be significant the absence of evidence that either

appellant was involved in the drug distribution scheme: "Unlike

the evidence against the other defendants . . . the evidence

against Torres-Maldonado and Gotay-Col n failed to establish any

-18-

connection between these two defendants, on one hand, and those

drug distribution transactions which appeared to involve guns, on

the other." Id. at 102. Again, the evidence here shows that 

Nieves-Burgos was a direct participant in the drug distribution

scheme.

b. Facilitative Nexus b. Facilitative Nexus 

Use, as that term applies in 924(c)(1), requires more

than mere possession of a firearm, but does not require outwardly

apparent utilization: "[the] weapon need not be brandished,

displayed or discharged." United States v. Reyes-Mercado, 22 

F.3d 363, 367 (1st Cir. 1994) (citations omitted). To sustain a

conviction under this section for the use of a firearm, there

must be shown "some facilitative nexus between the weapon and the

criminal activity." Id. (citations omitted).  

We have stated that, "'the government need not prove

actual possession by the defendant, only that the firearm was

readily accessible for the defendant's use' and that '[p]lacing a

weapon nearby to protect a drug operation comes within the

definition of "used"' for purposes of section 924(c)." United 

States v. Wight, 968 F.2d 1393, 1396 (1st Cir. 1992) (citing 

United States v. Abreu, 952 F.2d 1458, 1466 (1st Cir.), cert. 

denied, 502 U.S. 994 (1992)). "[W]here a drug trafficker is not 

carrying a gun on his person, but has one nearby, the court's

critical concern is not whether the gun was 'instantly available'

or 'exclusively dedicated to the narcotics trade,' but whether it

was 'available for use' in connection with the narcotics trade."

-19-

United States v. Castro-Lara, 970 F.2d at 983. Among the factors 

we examine in determining whether a gun was available for use in

connection with a drug operation are the proximity of the gun to

the drugs and drug proceeds and the availability of the gun to

the defendant. See, e.g., United States v. Paulino, 13 F.3d 20, 

26 (1st Cir. 1994) ("Drugs, drug paraphernalia, and a loaded

revolver were located in close proximity to one another.

[Appellant] had an apparent possessory interest in, and a

significant degree of control over, the premises. On these

facts, a reasonable factfinder certainly could find the requisite

facilitative nexus . . . ."); United States v. Castro-Lara, 970 

F.2d at 983 ("Appellant was apprehended in his car, at the scene

of a drug pickup, with the gun inside the car's trunk. . . . [W]e

believe a rational jury was free to conclude that the location of

the firearm -- near a large sum of cash, in close proximity to

live ammunition, and at a place where drugs were to be delivered

-- coupled with the timing -- [appellant] brought the gun to the

airstrip in the course of taking delivery of a sizable quantity

of cocaine -- supported a finding that the firearm was 'available

for use' during and in relation to the drug trafficking crime.").

There was testimony at trial that the gun was found in

room 311 in a zippered bag less than two feet from Nieves-Burgos,

and that also found in the room were several quantities of

cocaine, bundles of cash, and various instruments and supplies

typically utilized for packaging cocaine. This evidence is

sufficient to support a finding that the gun in room 311 was used

-20-

by Nieves-Burgos to protect the drugs of which he was in

possession. Although there is evidence in the record that weighs

against this conclusion, the jury presumably considered all of

the evidence and drew the permissible inference that the gun was

used by Nieves-Burgos during and in relation to his possession

with intent to distribute cocaine, in violation of 924(c)(1).

See United States v. Batista-Polanco, 927 F.2d 14, 17 (1st Cir. 

1991) ("the factfinder may decide among reasonable

interpretations of the evidence").

CONCLUSION CONCLUSION

Nieves-Burgos' conviction is supported sufficiently by

the evidence and stands without error. The conviction is

affirmed.

Affirmed. Affirmed. 

-21-