UNITED STATES of America

v.

Keith HARRISON, Appellant.

UNITED STATES of America

v.

Eric M. BLACK, Appellant.

UNITED STATES of America

v.

Felando F. BUTLER, Appellant.

Nos. 89–3152 through 89–3154.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 31, 1991.

Decided April 19, 1991.

Rehearing Denied June 13, 1991.

Stephen C. Leckar (appointed by the court), for appellant Keith Harrison in 89–3152.

Matthew C. Leefer (appointed by the court), for appellant Eric M. Black in 89–3153.

Michael Olshonsky (appointed by the court), for appellant Felando Butler in 89–3154.

Robert Spagnoletti, Asst. U.S. Atty. of the bar of the Southern District of Texas, pro hac vice, by special leave of the court, with whom Jay B. Stephens, U.S. Atty., and John R. Fisher, Roy W. McLeese, and Brenda Johnson, Asst. U.S. Attys., were on the brief, for appellee.

Before MIKVA, Chief Judge, and EDWARDS and THOMAS, Circuit Judges.

Opinion for the Court filed by Circuit Judge THOMAS.

CLARENCE THOMAS, Circuit Judge:

At a joint trial, appellants Keith Harrison, Eric Black and Felando Butler were each convicted of one count of possessing and intending to distribute at least five grams of a mixture of cocaine base, *see* 21 U.S.C. § 841(a)(1), (b)(1)(B)(iii), and one count of using or carrying a firearm during a drug trafficking offense, *see* 18 U.S.C. § 924(c)(1). Among other contentions, Harrison challenges the district court's refusal to sever his trial from those of his codefendants, Black asserts a violation of his fifth amendment right against self-incrimination, and Butler challenges the sufficiency of evidence underlying his firearms conviction. We affirm each conviction.

## I.

On the evening of March 2, 1989, the District of Columbia police stopped a van bearing a temporary license tag identified by the police as stolen. Harrison was driving the van, Black was sitting in the front passenger seat, and Butler was sitting in the rear.

The three men were ordered out of the van and frisked. According to three of the arresting officers, Harrison was carrying an unregistered handgun in a holster clipped to his belt. Harrison also held $595 in cash, including four $100 bills and one $50 bill. In his pants pocket, Black was carrying about 4.5 grams of nearly pure cocaine base, packaged in eighteen individually wrapped plastic bags. Black was also carrying an unregistered handgun in his waistband. Butler was wearing a bulletproof vest underneath his clothing.

The van itself contained several other items of incriminating evidence. In the rear cargo area, behind Butler's seat, the officers found a gym bag containing over 42 grams of diluted cocaine base. Also in the rear, they found a temporary license tag with a different number from the one on the tag displayed outside the van. They also found a weapons magazine, which contained pictures of the guns carried by Harrison and Black. On the back seat, next to where Butler had been sitting, they found a bag containing another weapons magazine and two fully loaded ammunition clips. Inside the glove compartment they found the vehicle's title, issued in March 1988 to a Randolph Stribling and assigned by Stribling to Harrison. Stribling later testified that he had never driven the van and that he had signed it over to Harrison to "get it out of my name."

At trial, the government introduced expert testimony on the significance of this evidence. The government's expert testi-

fied that drug dealers commonly use weapons, bulletproof vests, temporary or stolen license tags, and automobiles purchased through others. He testified that drug sales often generate large cash proceeds and that drug dealers do not expose their operations to third parties unnecessarily. In sum, the expert concluded, the evidence indicated a "street-level distribution network, operating on a mobile basis."

In their respective defenses, Harrison and Butler each claimed ignorance of the misdeeds attributed to the others. Both testified that Black and Butler were hitchhikers barely known to Harrison. Harrison testified that the bag of drugs belonged to Black or Butler, and Butler testified that it was already in the van when he and Black entered. Harrison and Butler each denied knowing that Black had been carrying a weapon and drugs.

When Harrison sought to call Black to the stand, Black refused to testify, invoking his fifth amendment privilege against self-incrimination. Harrison and Butler each moved to sever their trials from Black's in order to obtain Black's testimony. The district court denied both motions.

## II.

■ On appeal, Harrison challenges the district court's refusal to sever his trial from those of his codefendants. Under rule 14 of the Federal Rules of Criminal Procedure, a district court "may ... grant a severance" if "it appears that a defendant ... is prejudiced by a joinder of ... defendants."[1] Because of the rule's permissive language, as well as "the Government's strong [administrative] interest in favor of joint trials," *United States v. Perry,* 731 F.2d 985, 992 (D.C.Cir.1984), we will not lightly disturb a district court's decision to deny severance. *See, e.g., United States v. Manner,* 887 F.2d 317, 324 (D.C.Cir.1989) (noting that we generally have "str[uck] a balance in favor of joint trials"), *cert. denied,* —— U.S. ——, 110 S.Ct. 879, 107 L.Ed.2d 962 (1990). We do not reverse "merely because a defendant 'might have a better chance of acquittal if tried separately,'" *United States v. Wright,* 783 F.2d 1091, 1095 (D.C.Cir.1986) (citation omitted), but "only if we determine that the movant did not get a fair trial," *United States v. Halliman,* 923 F.2d 873, 884 (D.C.Cir. 1991).

■ Harrison challenges the district court's refusal to sever on the ground that it prevented him from introducing exculpatory testimony by Black, who, Harrison asserts, would have testified on his behalf at a separate trial. This particular claim is governed by *United States v. Ford,* 870 F.2d 729 (D.C.Cir.1989), in which we set out a general standard "to govern the disposition of severance motions based on the asserted need for a co-defendant's testimony." *Id.* at 731. Under *Ford,* in order to establish a prima facie case for severance, a movant must show "(1) a bona fide need for the testimony; (2) the substance of the testimony; (3) the exculpatory nature and effect of the testimony; and (4) the likelihood that the co-defendant will testify if the cases are severed." *Id.* Failure to demonstrate any one of these elements is dispositive. *See id.* at 732.[2]

In *Ford,* we held further that the substance of the codefendant's testimony must be established with sufficient specificity "to allow the court reasonably to conclude that the testimony would in fact be 'sub-

---

**1.** In its entirety, rule 14 provides:

If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. In ruling on a motion by a defendant for severance the court may order the attorney for the government to deliver to the court for inspection *in camera* any statements or confessions made by the defendants which the government intends to introduce in evidence at the trial.

**2.** Once a prima facie showing is made, "the trial court must then: (1) examine the significance of the testimony in relation to the defendant's theory of the case; (2) assess the extent of prejudice caused by the absence of the testimony; (3) consider the effects on judicial administration and economy; and (4) give weight to the timeliness of the motion." *Ford,* 870 F.2d at 731.

stantially exculpatory.'" *Id.* (citation omitted). We applied this specificity requirement quite strictly on the facts of *Ford* itself.

Glenwood Ford and Timothy Green were jointly convicted of selling PCP to undercover police officer Peter Markland. Markland and Green completed the transaction while Ford waited for Green in his nearby automobile. At trial, Ford testified that he was an unwitting accomplice, having merely agreed to give Green a ride because Green was having car trouble on the night in question. Markland testified against Ford; Green did not testify. Ford moved for a severance, informing the district court that at a separate trial, Green would testify that Ford "had nothing to do with the transaction." *Id.* The district court denied the motion, and Ford appealed.

In affirming Ford's conviction, we held in part that Ford had not identified the substance of Green's testimony with sufficient specificity. Given the context, we might have indulged an inference that Green, in testifying that Ford "had nothing to do with the transaction," would simply corroborate Ford's testimony. Instead, we noted that Green's testimony was "not *necessarily* exculpatory," because Green might have testified only that Ford was not *physically* present when the sale was made. *See id.* (emphasis added). We concluded, therefore, that Ford's showing "d[id] not provide the *specific* facts necessary for the District Court to determine that [Ford] 'w[ould] be unable to obtain a fair trial without severance.'" *Id.* (emphasis added and citation omitted).

■ In this case, Harrison asserts on appeal that "[t]he substance of ... Black's testimony would have been ... that Harrison didn't know that the two hitchhikers he had picked up on a cold night out of a sense of friendship were carrying drugs and weapons." Brief for Appellant Harrison at 16. We have little doubt that such testimony, if offered, would be sufficiently important and sufficiently exculpatory to meet the first and third prongs of the prima

facie showing required by *Ford*. We find the second prong not met, however, because we can discern nothing in the record from which to conclude that Black's testimony would have been what Harrison now asserts. After moving for a severance, Harrison's lawyer failed to inform the court of the likely content of Black's testimony, and Butler's lawyer asserted only that Black's testimony would be "significantly exculpatory" (as to Butler). Tr. 526. We think it clear that such "conclusory statements by counsel" are patently insufficient to meet the exacting specificity requirement of *Ford*. *See* 870 F.2d at 732.[3]

Harrison concedes that he failed to set forth "the nature of [Black's] testimony ... in great detail"; nonetheless, he argues that "the nature of Black's testimony was sufficiently obvious" under the circumstances. Brief for Appellant Harrison at 17. Harrison thus invites us to infer content from context. As he explains, since "[t]he physical evidence was irrefutable," Harrison's only conceivable defense was "the issue of intent." Given this, he asserts, "[t]he only reasonable inference was that Black was in a position to absolve Harrison of knowledge" of the drug trafficking. *Id.* at 17–18.

This line of reasoning fails to distinguish *Ford* itself. In *Ford*, the physical evidence of drug trafficking was irrefutable, Ford's only conceivable defense was lack of knowledge of Green's drug trafficking, and Green was in a position to confirm Ford's lack of knowledge, if anyone was. Nonetheless, we refused to infer what the substance of Green's testimony would have been, even given Ford's arguably informative statement that Green would have testified that Ford "had nothing to do with the transaction." *See* 870 F.2d at 732. Under *Ford*, then, the district court need not infer the substance of the codefendant's testimony from the facts of the case, even in situations where the inference might seem obvious. We therefore conclude that Harrison failed to identify the substance of

---

**3.** Having reviewed the trial transcript, we find no merit in Harrison's contention that the district court failed to give him adequate opportunity to make the necessary showing.

Black's testimony with the degree of specificity required under *Ford*.[4]

Harrison argues that in applying the *Ford* elements to this case, we should draw guidance from analogous decisions in *United States v. Shuford*, 454 F.2d 772 (4th Cir.1971), *United States v. Martinez*, 486 F.2d 15 (5th Cir.1973), and *United States v. Vigil*, 561 F.2d 1316 (9th Cir.1977). Neither *Shuford* nor *Vigil* helps Harrison, however: in each of those cases, the movant informed the court of the exact nature of the testimony that the codefendant had offered to give at a separate trial. *See* 561 F.2d at 1317; 454 F.2d at 775 n. 1. The *Martinez* court, given a conclusory statement that the codefendant's testimony would be exculpatory, did find the substance of the testimony "apparent" enough from context to require a severance. *See* 486 F.2d at 22–23. To that extent, *Martinez* is simply inconsistent with *Ford*, which, of course, we are bound to follow.

Because Harrison has not demonstrated that he failed to receive a fair trial, we find no abuse of discretion in the district court's denial of his motion for severance.[5]

### III.

After Harrison's fourth defense witness finished testifying, Harrison's lawyer abruptly announced in open court that he "would call Mr. Eric Black at this time." Tr. 520. Black's lawyer immediately requested a bench conference, at which he informed the court that Black intended to assert his right against self-incrimination. The court called a recess and announced to the jury that it had to "work out" a "legal problem" with the lawyers. Tr. 521. After the recess, the court informed the jury that "Eric Black will not be [Harrison's] next witness." Tr. 531. At the end of the trial, the district court gave a standard instruction informing the jury that "every defendant in a criminal case has the absolute right not to testify" and forbidding it from "draw[ing] any inference of guilt against a defendant because he did not testify." Tr. 733–34.

Black contends that this sequence violated his rights under the fifth amendment, which prohibits one codefendant from putting another on the witness stand "for the purpose of having him exercise his privilege before the jury." *Bowles v. United States*, 439 F.2d 536, 542 (D.C.Cir.1970) (en banc), *cert. denied*, 401 U.S. 995, 91 S.Ct. 1240, 28 L.Ed.2d 533 (1971). Black argues further that the putative fifth amendment violation entitled him to a severance. For this proposition, he relies on authority that if one defendant (such as Black) invokes his fifth amendment right not to testify but presents a defense "truly antagonistic" to his codefendants', then the sixth amendment might entitle the codefendants (such as Harrison) to a severance. *See, e.g., United States v. Lemonakis*, 485 F.2d 941, 952 (D.C.Cir.1973), *cert. denied*, 415 U.S. 989, 94 S.Ct. 1586, 1587, 39 L.Ed.2d 885 (1974); *see also DeLuna v. United States*, 308 F.2d 140 (5th Cir.1962). Even assuming that *Lemonakis* also entitles the non-testifying defendant to seek a severance in this situation, Black did not

---

4. We reject Harrison's contention that he made the necessary showing during opening argument, when his counsel promised the jury that the owner of the drugs would absolve Harrison of responsibility. Eight days later, when the severance issue was presented to the district court, Harrison's counsel never so much as referred to his opening statement, which had failed to identify Black in any way. Under these circumstances, we cannot fault the court for failing to consider the opening statement in determining whether Harrison had made the necessary showing.

5. Harrison briefly suggests that he was also entitled to severance under cases like *United States v. Tarantino*, 846 F.2d 1384 (D.C.Cir.), *cert. de-*

*nied*, 488 U.S. 867, 109 S.Ct. 174, 102 L.Ed.2d 143 (1988), which prohibit joint trials if the evidence against one codefendant is "far more damaging" than the evidence against another. *See id.* at 1398–99. The danger, in such a case, is that evidence highly exculpatory as to one defendant " 'may lead the jury to be either confused or prejudiced' " in assessing the evidence against a codefendant. *Manner*, 887 F.2d at 324. Here, however, the evidence was not "dramatically disparate," *Tarantino*, 846 F.2d at 1398–99, and "the risk of jury confusion ... was minimal," *Halliman*, 923 F.2d at 884. Accordingly, we reject Harrison's alternative contention.

**70**

present his fifth amendment argument to the district court.

As Black notes, he twice moved for severance at the beginning of the proceedings. Those motions, however, were based on the dubious proposition that the evidence against Harrison was "far more damaging" than the evidence against Black, *see, e.g., United States v. Tarantino,* 846 F.2d 1384, 1398–99 (D.C.Cir.), *cert. denied,* 488 U.S. 867, 109 S.Ct. 174, 102 L.Ed.2d 143 (1988); *supra* note 5—an entirely different theory that would not have alerted the court to the alleged fifth amendment deprivation of which Black now complains. Black also notes that after he asserted his right not to testify, both Harrison and Butler moved for severances which, if granted, would have resulted in a separate trial for Black as well. Harrison's and Butler's motions, however, rested on the ground that they needed exculpatory testimony that Black would be willing to give at separate trials, *see supra* Part II—a theory that likewise would have failed to alert the district court to Black's fifth amendment claim. Thus, even assuming that Black may be deemed constructively to have joined in Harrison's and Butler's motions, those motions as well failed to preserve the contention that Black now advances.

Because Black failed to preserve his fifth amendment claim below, we consider only whether the district court committed plain error. *See* Fed.R.Crim.P. 52(b).[6] An error is "plain" under rule 52(b) only if it is so obvious that "the trial judge and prosecutor were derelict in countenancing it." *United States v. Frady,* 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982); *see, e.g., United States v. Thomas,* 896 F.2d 589, 591 (D.C.Cir.1990) (noting that the "error must be clear under settled law to constitute 'plain error'"). In addition, the error must have had "an unfair prejudicial impact on the jury's deliberations"— an inquiry that turns on the strength of the state's evidence in the particular case. *See United States v. Young,* 470 U.S. 1, 16–17 & n. 14, 105 S.Ct. 1038, 1046–47 & n. 14, 84 L.Ed.2d 1 (1985). Although the Supreme Court has yet to define the exact amount of prejudice that must be shown, we need not find an error prejudicial just because we cannot say that it was harmless beyond a reasonable doubt—a standard that would "render meaningless the contemporaneous-objection requirement in the context of constitutional error." *See United States v. Robinson,* 485 U.S. 25, 108 S.Ct. 864, 870–71 & n. *, 99 L.Ed.2d 23 (1988) (Blackmun, J., concurring in part and dissenting in part) (suggesting that an error is prejudicial for purposes of rule 52(b) if "'it is *probable* that the error could have affected the verdict'" (emphasis added and citation omitted)).

■■ Black contends that his fifth amendment rights were violated as soon as Harrison announced his intention to call Black as a witness, although the district court vindicated Black's right not to testify as unobtrusively as possible—without requiring Black to assert it on the stand.[7]

---

**6.** Rule 52(b) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

**7.** Although we have never squarely addressed a situation such as this one, our cases have described the right recognized in *Bowles* as a right not to be forced to the witness stand. *See, e.g., United States v. Pitts,* 918 F.2d 197, 200 (D.C.Cir. 1990) ("A witness may not be *put on the stand* for the purpose of allowing the jury to watch him 'take the Fifth.'" (emphasis added)); *United States v. Thornton,* 733 F.2d 121, 125 (D.C.Cir. 1984) (stating that the "right to compulsory process does not include [the] right to have the witness *assert fifth amendment privilege before the jury*" (emphasis added)); *United States v. Simmons,* 663 F.2d 107, 108 (D.C.Cir.1979) (per curiam) ("[A] witness has the right to exercise [the fifth amendment] privilege *without taking the stand.*" (emphasis added)); *United States v. Reese,* 561 F.2d 894, 899 (D.C.Cir.1977) ("[A] defendant has no right to *put a witness on the stand* simply to require him to assert his Fifth Amendment privilege before the jury." (emphasis added)). *But cf. Coleman v. United States,* 420 F.2d 616, 623–25 (D.C.Cir.1969) (finding fifth amendment violations when counsel for three codefendants were required in turn to state in open court that their clients had declined to testify).

We need not decide whether error occurred, because whatever error might have occurred was not sufficiently prejudicial to permit a reversal under rule 52(b).

We agree with the government that the case against Black was particularly strong. We recognize that Black's drug conviction under 21 U.S.C. § 841(b)(1)(B)(iii), which requires possession of at least five grams of cocaine base, cannot be sustained based only on the 4.5 grams of cocaine base that Black was carrying in his pocket. We think, however, that Black's presence in the van, coupled with undisputed evidence that he was carrying both drugs packaged for distribution and a weapon, makes out a very strong case for linking him to the drugs behind the back seat. Under these circumstances, we find it highly improbable that Harrison's brief and unsuccessful attempt to put Black on the witness stand affected the verdict as to Black. Whatever error might have occurred is far too insubstantial to permit reversal under a claim not properly preserved.[8]

## IV.

Butler contends that the record contains insufficient evidence to support his firearms conviction under 18 U.S.C. § 924(c)(1). When we review a criminal conviction for sufficiency of evidence, of course, we do so very deferentially. We do not determine whether we would find guilt beyond a reasonable doubt, but only whether any reasonable jury *could* find guilt beyond a reasonable doubt. *See, e.g., Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). In making that determination, we must consider the evidence in the light most favorable to the government. *See, e.g., Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

■ In pertinent part, section 924(c)(1) provides for punishment of anyone who "uses or carries a firearm" during and in relation to a drug trafficking crime.[9] In order to establish that a defendant "use[d] or carrie[d] a firearm," the government must prove that the defendant actually or constructively possessed it. *See United States v. Long*, 905 F.2d 1572, 1576 & n. 6 (D.C.Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 365, 112 L.Ed.2d 328 (1990). Constructive possession exists when one knowingly is in a position to exercise dominion and control over the object possessed, either personally or through others. *See, e.g., United States v. Staten*, 581 F.2d 878, 883 (D.C.Cir.1978). Constructive possession of a firearm, so defined, is sufficient to establish a violation of section 924(c)(1) if the firearm is " 'within easy reach and available to protect [the user] during his ongoing [drug trafficking] offense.' "

8. Independently of any special fifth amendment problems, severance may be required when defendants rely on "mutually contradictory defenses." *Manner*, 887 F.2d at 324. On appeal for the first time, Black suggests briefly that he was entitled to severance under this line of authority as well. Black alleges inconsistency between his defense (advanced during closing argument)—absence of knowledge that Harrison was carrying drugs in the rear of the van—and Harrison's defense—absence of knowledge that Black or Butler had brought drugs into the van. Apart from Black's failure to preserve this argument, it is patently without merit. The so-called "doctrine of antagonistic defenses" is a narrow one. *See id.* at 326. It applies only when " 'there is a danger that the jury will unjustifiably infer that this conflict *alone* demonstrates that both are guilty' "; it does not apply when "independent evidence of each defendant's guilt supports the jury's verdict." *United States v. Leonard*, 494 F.2d 955, 966 (D.C.Cir.1974) (citation omitted and emphasis added in *Leonard* ). In this case, even without Harrison's testimony, the evidence was more than sufficient to support Black's convictions.

9. Section 924(c)(1) provides:

Whoever, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years....

*United States v. Joseph*, 892 F.2d 118, 126 (D.C.Cir.1989) (citation omitted).[10]

In this case, the jury's finding that Butler was involved in drug trafficking is supported. The two weapons were readily available to protect that activity, although there is no allegation that Butler actually possessed either of them. The sole question we consider, therefore, is whether the jury could reasonably have found that Butler constructively possessed either of the firearms.

· Our cases frequently have addressed situations involving passengers in motor vehicles accused of constructively possessing items of contraband found in the vehicles, but not on anyone's person. *See, e.g., United States v. Gibbs*, 904 F.2d 52, 56–58 (D.C.Cir.1990) (drugs under seat); *United States v. Hernandez*, 780 F.2d 113, 120–21 (D.C.Cir.1986) (weapon on floorboard); *United States v. Whitfield*, 629 F.2d 136, 142–43 (D.C.Cir.1980) (weapons under front seats), *cert. denied*, 449 U.S. 1086, 101 S.Ct. 875, 66 L.Ed.2d 812 (1981); *United States v. Bethea*, 442 F.2d 790, 792–93 (D.C.Cir.1971) (drugs behind back seat). We have held that mere presence in the vehicle is not enough, *see, e.g., Bethea*, 442 F.2d at 792–93, although presence is especially significant where, as here, it "could rationally have been viewed as a privilege reserved exclusively for participants" in the unlawful activity, *Staten*, 581 F.2d at 885. Depending on the circumstances, we have indicated that any of several factors in addition to mere presence, "including connection with a gun, proof of motive, a gesture implying control, evasive conduct, or a statement indicating involvement," *Gibbs*, 904 F.2d at 56, might be sufficient. Here, for example, Butler's presence in the van, coupled with his wearing a bulletproof vest, was sufficient evidence to support a finding that Butler constructively possessed the drugs behind the back seat. *Cf. United States v. McDowell*, 762 F.2d 1072, 1075–76 (D.C.Cir.1985) (per curiam) (holding that possession of a bulletproof vest is "significant[ly] probative" of an intent to distribute because a dealer "is more likely than an ordinary drug abuser to fear that others might try to shoot him, and to acquire a bulletproof vest in order to guard against that danger").[11]

■ The question whether Butler constructively possessed a firearm is more difficult, because the only firearms recovered from the van were found on the persons of Harrison and Black.[12] Other factors being equal, it is less likely that one exercises a right of control over an item physically held by another than over an item in some common area readily accessible to all present. Nonetheless, we conclude that the jury could reasonably have found that

---

**10.** Our cases have hinted at a distinction between "us[ing]" and "carr[ying]" a firearm for purposes of § 924(c)(1), but provide scant guidance as to what that distinction might be. *Compare Long*, 905 F.2d at 1576 & n. 6 (finding insufficient evidence of "use" and holding that "'use' ... is properly susceptible of a broader interpretation than 'carry'") *with Joseph*, 892 F.2d at 125–26 (finding sufficient evidence of "carrying" but reserving the question whether the evidence was sufficient to establish "using"). We draw no distinction between using and carrying a firearm for purposes of our analysis in this case, and we need not decide whether such a distinction might make a difference in other cases.

**11.** Similarly, Harrison's presence, coupled with the fact that he was driving a van bearing a stolen license tag and with his possession of a large amount of cash and a weapon, was more · than sufficient evidence to support a finding connecting him to the drug trafficking activity.

**12.** Although three arresting officers testified that Harrison was carrying a weapon on his belt, Harrison himself testified that the weapon was under the front seat. Conceivably, the jury might have believed Harrison on this point, but convicted him on the theory that he constructively possessed the weapon nonetheless. Because crediting Harrison's testimony significantly *strengthens* the case against Butler, the government might have argued that the evidence, viewed in a light most favorable to it, indicates that the weapon was under the seat. Evidently more concerned with preserving Harrison's firearms conviction, however, the government continues to insist that Harrison was carrying the weapon on his person. *See, e.g.*, Brief for Appellee at 3, 15, 30.

Butler constructively possessed either or both of the firearms.

All three defendants, the jury found, intended to distribute the cocaine base recovered from the van. Evidently recognizing the hazards of that activity, Butler expected some possibility that he would be shot at while doing so. Since drug dealers are hardly known to be irenically disposed (as evidenced by the weapons, weapons magazines, and ammunition recovered in this case), the jury could reasonably have inferred that when and if Butler was shot at, he would either use one of his confederates' guns to shoot back, or else instruct one of them to do so. It could have inferred, in other words, that Butler knew he had "some appreciable ability to guide the destiny" of the weapons, *Staten,* 581 F.2d at 883, "some stake in them, some power over them," *United States v. Pardo,* 636 F.2d 535, 549 (D.C.Cir.1980). That is sufficient to establish constructive possession as to Butler.

### V.

We have considered appellants' various other contentions, and we conclude that they are all without merit. The judgments of conviction are therefore

*Affirmed.*