UNITED STATES, Appellee,

v.

Frank NIEVES–BURGOS,
Defendant–Appellant.

No. 94–1370.

United States Court of Appeals,
First Circuit.

Heard Nov. 8, 1994.

Decided Aug. 14, 1995.

**432**

Juan R. Acevedo–Cruz, by Appointment of the Court, Hato Rey, PR, for appellant.

John F. DePue, Atty., Dept. of Justice, with whom Guillermo Gil, U.S. Atty., Washington, DC, Warren Vázquez, Asst. U.S. Atty., Hato Rey, PR, and Nina Goodman, Atty., Dept. of Justice, Washington, DC, were on brief for appellee.

Before TORRUELLA, Chief Judge, BOUDIN, Circuit Judge, and BOYLE,[*] Senior District Judge.

FRANCIS J. BOYLE, Senior District Judge.

This case presents two issues concerning the conviction of the appellant, Frank Nieves–Burgos, for use of a firearm during a drug-trafficking offense in violation of 18 U.S.C. § 924(c)(1). Nieves–Burgos asserts, first, that the jury's general verdict of guilty on the firearm charge is ambiguous and must be set aside, as it was returned on a single charge containing three alleged violations, two of which were not supported by the evidence at trial. Second, Nieves–Burgos asserts that the only alleged violation supported by evidence at trial was itself not supported by sufficient evidence. We conclude that the jury verdict is not ambiguous and is adequately supported by the evidence, and we affirm.

[*] Of the District of Rhode Island, sitting by designation.

## I. BACKGROUND

The factual background of this appeal is set forth in *United States v. Torres–Maldonado*, 14 F.3d 95, 98–100 (1st Cir.), *cert. denied*, — U.S. —, 115 S.Ct. 193, 130 L.Ed.2d 125 (1994), an appeal taken by Nieves–Burgos' co-defendants. We therefore recount the relevant facts, which for the most part are not disputed, only briefly, and, as is appropriate, we do so in the light most favorable to the verdict. See *United States v. Torres–Maldonado*, 14 F.3d 95, 98 (1st Cir.), *cert. denied*, — U.S. —, 115 S.Ct. 193, 130 L.Ed.2d 125 (1994).

In February 1991, Nieves–Burgos and several others rented rooms 310, 311, and 327 of the Carib Inn Hotel in Isla Verde, Puerto Rico. Nieves–Burgos rented room 311 using a false name. The group occupied the rooms for several weeks. On March 6, 1991, hotel security personnel notified police of suspicious conduct in the three rooms. There had been frequent traffic to, from, and between the rooms; the three rooms received 90% of the hotel's incoming telephone calls; the rooms often were paid for together, in cash; and, a hotel floor supervisor observed two handguns on a bureau in room 327.

Agents of the United States Bureau of Alcohol, Tobacco, and Firearms (ATF) began surveillance of the hotel on March 6. At approximately 11:00 p.m. that evening, they observed Nieves–Burgos, Héctor Santiago–Alicea, Teddy León–Ayala, Oscar Díaz–Cruz, and an unidentified man in the hotel lobby. The agents observed Santiago–Alicea wearing a bullet-proof jacket, which was bulging from something concealed underneath. The group proceeded outside the hotel to a parking lot, where the unidentified man produced a bag and handed it to Santiago–Alicea.

Later that same evening, another unidentified man arrived at the hotel, and was met by Nieves–Burgos and Pedro Luis Ramírez–Rivera (Ramírez–Rivera). After a brief conversation, Nieves–Burgos and Ramírez–Rivera left the unidentified man. They returned a short while later with Santiago–Alicea, who exchanged packages with the unidentified man.

On March 7, 1991, ATF agents executed a search warrant at the three hotel rooms. In room 311, they found five persons: Nieves–Burgos, Marilyn Gotay–Colón, Catalino Torres–Maldonado, Ramírez–Rivera, and Santiago–Alicea. Nieves–Burgos was on one of the room's two beds, clad in his underwear. A search of the room revealed quantities of cocaine, several bundles of cash, various instruments and supplies typically used for packaging cocaine, a bullet-proof jacket, and a loaded Beretta semi-automatic handgun. The gun was found with a bundle of cash in a zippered bag on a sofa on which Gotay–Colón was seated. The bag was located less than two feet from Nieves–Burgos.

Rooms 310 and 327 were also searched, as were two cars that were in the hotel's parking lot. More cocaine and paraphernalia were found in the two rooms. Guns were found in the two cars. In a green Ford LTD, agents found a loaded .357 revolver; also found were a picture of Nieves–Burgos and a parking ticket on which was Nieves–Burgos' fingerprint. In a grey Buick, a nine-millimeter pistol was found. The Buick's registration certificate was found in Santiago–Alicea's wallet.

Nieves–Burgos and others were indicted. In counts one and two of the indictment, Nieves–Burgos and others were charged with possessing with the intent to distribute, and conspiring to possess with the intent to distribute, cocaine. Count four[1] charged Nieves–Burgos and five others with the knowing unlawful use of three firearms during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1).[2] The firearms alleged in count four to have been used in violation of § 924(c)(1) are the three handguns found in room 311 of the hotel and the two cars searched in the hotel parking lot.

Evidence of the three firearms was presented at trial. At the close of the evidence, the trial judge instructed the jury without objection and presented them with a copy of the indictment for their deliberation. As to Nieves–Burgos, the jury returned general verdicts of guilty on counts one, two, and four.

Nieves–Burgos took no appeal from the guilty verdict or his sentence. Upon his imprisonment, he filed a motion to vacate his sentence under 28 U.S.C. § 2255, claiming ineffective assistance of counsel. His motion was granted, and he was afforded new coun-

1. Count four provides in full:

On or about March 7, 1991, in the District of Puerto Rico and within the jurisdiction of this Court, **FRANKIE NIEVES–BURGOS, also known as KENNY RAMIREZ, also known as JOSE HERRERA–RIVERA, PEDRO LUIS RAMIREZ–RIVERA, also known as PEDRO MEDINA–RIVERA, CATALINO TORRES–MALDONADO, MARILYN GOTAY–COLON, HECTOR SANTIAGO–ALICEA, TEDDY LEON–AYALA, and OSCAR DIAZ–CRUZ, also known as OSCAR SANTIAGO**, the defendants herein, aiding and abetting each other, did knowingly and unlawfully use three (3) firearms of the following descriptions:
(a) Beretta semi-automatic pistol caliber 9mm., Model 92–F, black in color, serial number BER042822Z loaded with ammunition of its own [sic];
(b) Smith and Wesson Revolver, caliber .357 magnum; Model 27–2, three and one half (3½) inch barrel, nickel plated in color with brown grip, serial number N109155; loaded with ammunition of its own caliber;
(c) Norinco semi-automatic pistol, caliber 9mm., Model L213, black in color, serial number 315202, loaded with ammunition of its own caliber; during and in relation to the

commission of an offense punishable under the Drug Abuse Prevention and Control Act, that is, a violation of Title 21, United States Code, Section 841(a)(1), involving the Schedule II Narcotic Drug Controlled Substance cocaine, as defined in Title 18, United States Code, Section 924(c)(1), which may be prosecuted in a Court of the United States, to wit: aiding and abetting each other in the possession with intent to distribute of approximately nine hundred fifty-six point one (956.1) grams (gross weight) of cocaine, a Schedule II Narcotic Drug Controlled Substance; all in violation of Title 18, United States Code, Section 924(c)(1).

2. 18 U.S.C. § 924(c)(1) provides in part:

Whoever, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years
. . . .

sel for resentencing. On count four, he was sentenced to sixty months' imprisonment, to run consecutive to his sentences on the other two counts.

Nieves–Burgos now appeals the guilty verdict on count four. He asserts that the evidence was not sufficient to support his conviction as to any of the three firearms. The United States argues in response that the evidence of the firearm found in room 311 was sufficient to support the conviction. The government expressly declines to argue that evidence concerning either of the two firearms found in the automobiles was sufficient to support the conviction.[3] During argument, the parties were asked to submit supplemental briefs concerning the issue whether the general verdict of guilty should stand where it was returned on a count containing three alleged violations of the firearms statute, two of which concededly were unsupported by evidence at trial. The parties' arguments were received and considered. We address the issues.

## II. ANALYSIS

### A. *The General Verdict*

■ Nieves–Burgos initially argues that his conviction for violation of 18 U.S.C. § 924(c)(1) cannot stand as the jury's general verdict of guilty was ambiguous in that it was returned on a charge that alleged the use of three firearms in violation of 18 U.S.C. § 924(c)(1), and the evidence at trial was not sufficient to support a conviction as to two of the firearms. The government concedes that the evidence at trial did not support a conviction as to two of the three firearms listed in count four, but argues that the verdict should stand as it is supported by sufficient evidence as to the remaining firearm.

This issue was effectively determined in *Griffin v. United States*, 502 U.S. 46, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991). In *Griffin*, the appellant had been convicted by jury of an unlawful conspiracy in violation of 18 U.S.C. § 371. *See Griffin v. United States*, 502 U.S. 46, 47, 112 S.Ct. 466, 468, 116

L.Ed.2d 371 (1991). A single count in the indictment charged that the conspiracy had two unlawful objects: impeding efforts of the Internal Revenue Service to ascertain income taxes; and impeding efforts of the Drug Enforcement Administration to ascertain forfeitable income. *See id.* The evidence presented at trial failed to establish the appellant's guilt with respect to the second object. *See id.* at 47–48, 112 S.Ct. at 468–69. The trial court's instructions to the jury permitted them to return a guilty verdict if they found the appellant to have participated in either of the two objects of the conspiracy. *See id.* at 48, 112 S.Ct. at 468–69. The jury returned a general verdict of guilty. *See id.* The Court affirmed the verdict, citing the rule that when a jury returns a general verdict of guilty on a single count charging more than one criminal act, the verdict stands if the evidence sufficiently supports any of the acts charged. *See id.* at 56–57, 112 S.Ct. at 472–73 (citing *Turner v. United States*, 396 U.S. 398, 420, 90 S.Ct. 642, 654–55, 24 L.Ed.2d 610 (1970)).

*Griffin* provides what was a much-needed clarification of the law. Prior to *Griffin*, Supreme Court authority appeared somewhat disjointed, if not downright contradictory. *Compare Turner v. United States*, 396 U.S. at 420, 90 S.Ct. at 654–55 ("The general rule is that when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive ... the verdict stands if the evidence is sufficient with respect to any one of the acts charged.") *with Yates v. United States*, 354 U.S. 298, 312, 77 S.Ct. 1064, 1073, 1 L.Ed.2d 1356 (1957) ("[W]e think the proper rule to be applied is that which requires a verdict to be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected."). In *Griffin*, the Court articulated subtle distinctions between the lines of relevant cases, seeking to reconcile them. *See Griffin v. United States*, 502 U.S. at 52–56, 112 S.Ct. at 470–73. It is appropriate briefly to discuss the Supreme Court's analysis in *Griffin* be-

---

**3.** In its brief, the government states: "The government does not argue that Nieves–Burgos' conviction under Section 924(c)(1) is supported by [evidence of] the two guns found during the searches of the cars." Government's Brief at 7 n. 5.

fore we address the issue as it relates to this case.

In *Griffin*, the Court discussed the long-recognized general rule: "a general jury verdict [is] valid so long as it [is] legally supportable on one of the submitted grounds—even though [this gives] no assurance that a valid ground, rather than an invalid one, was actually the basis for the jury's action." *Id.* at 49, 112 S.Ct. at 469. The Court acknowledged that this doctrine has been settled law throughout this country's existence. *See id.* Indeed, the rule was declared by Lord Mansfield at King's Bench before the Declaration of Independence: "if there is any one count to support the verdict, it shall stand good, notwithstanding all the rest are bad." *Peake v. Oldham*, 1 Cowper 275, 276; 98 Eng.Rep. 1083, 1084 (K.B.1775), *quoted in Claassen v. United States*, 142 U.S. 140, 146, 12 S.Ct. 169, 170, 35 L.Ed. 966 (1891), *quoted in Griffin v. United States*, 502 U.S. at 49–50, 112 S.Ct. at 469–70. The rule, *Griffin* notes, was more recently followed in *Turner v. United States*, 396 U.S. 398, 420, 90 S.Ct. 642, 654, 24 L.Ed.2d 610 (1970). In *Turner*, the appellant had been charged in a single count with knowingly not only purchasing, but also dispensing and distributing heroin in violation of Federal law, and the jury returned a general verdict of guilty on the charge. *Turner v. United States*, 396 U.S. at 419–20, 90 S.Ct. at 653–54. The Court concluded that, because the evidence at trial was sufficient to support the contention that the appellant had distributed heroin in violation of the relevant statute, the verdict should be upheld, whether or not the evidence was sufficient to support the other conjunctive allegations in the count. *See id.* at 420–21, 90 S.Ct. at 654–55. The Court relied on what it labeled the "general rule" on the issue: "when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive ... the verdict stands if the evidence is sufficient with respect to any one of the acts charged." *Id.* at 420, 90 S.Ct. at 654, *quoted in Griffin v. United States*, 502 U.S. at 56–57, 112 S.Ct. at 472–73. *See also Turner v. United States*, 396 U.S. at 420 & n. 42, 90 S.Ct. at 655 n. 42, and cases cited.

The primary exception to the general rule, *Griffin* recognizes, finds its roots in *Stromberg v. California*, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931). *See Griffin v. United States*, 502 U.S. at 52, 112 S.Ct. at 470–71. In *Stromberg*, the appellant had been charged in a single count of an information of violating a California statute prohibiting the display of a red flag for any of three purposes: "as a sign, symbol or emblem of opposition to organized government[;] or as an invitation or stimulus to anarchistic action[;] or as an aid to propaganda that is of a seditious character." *Stromberg v. California*, 283 U.S. 359, 361, 51 S.Ct. 532, 533, 75 L.Ed. 1117 (1931) (citation omitted). The Court determined that the first of the statute's three clauses violates the Fourteenth Amendment. *See id.* at 369–70, 51 S.Ct. at 535–36. In setting aside the jury's general verdict, it stated: "[I]f any of the clauses in question is invalid under the Federal Constitution, the conviction cannot be upheld." *Id.* at 368, 51 S.Ct. at 535, *quoted in Griffin v. United States*, 502 U.S. at 53, 112 S.Ct. at 471. The rule of *Stromberg* thereafter was applied in many cases involving "general-verdict convictions that may have rested on an unconstitutional ground." *See Griffin v. United States*, 502 U.S. at 55, 112 S.Ct. at 472, and cases cited.

In *Yates v. United States*, 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957), the Court extended the rule of *Stromberg*, and in doing so, created some confusion. *Yates* concerns the convictions of numerous appellants on a single-count indictment charging them with violating a California statute by conspiring for two unlawful purposes: (1) advocating the violent overthrow of the government; and (2) organizing the Communist Party of the United States. *See Yates v. United States*, 354 U.S. at 300, 77 S.Ct. at 1067. The Court determined that the "organizing" charge was prohibited by the relevant statute of limitations. *See id.* at 312, 77 S.Ct. at 1073. The Court held: "In these circumstances we think the proper rule to be applied is that which requires a verdict to be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected." *Id.* (citing *Stromberg v. California*, 283 U.S.

at 367–68, 51 S.Ct. at 535; *Williams v. North Carolina*, 317 U.S. 287, 292, 63 S.Ct. 207, 209–10, 87 L.Ed. 279 (1942); *Cramer v. United States*, 325 U.S. 1, 36 n. 45, 65 S.Ct. 918, 935 n. 45, 89 L.Ed. 1441 (1945)).

As the Court acknowledged in *Griffin*, *Yates* constitutes a novel and unexplained extension of the *Stromberg* rule:

> *Yates* ... was the first and only case of ours to apply *Stromberg* to a general verdict in which one of the possible bases of conviction did not violate any provision of the Constitution but was simply legally inadequate (because of a statutory time bar). As we have described, that was an unexplained extension, explicitly invoking neither the Due Process Clause (which is an unlikely basis) nor our supervisory powers over the procedures employed in a federal prosecution.

*Griffin v. United States*, 502 U.S. at 55–56, 112 S.Ct. at 472. *Griffin* notes that none of the three cases cited in *Yates* to support its holding—*Stromberg* and two of its progeny, *Williams v. North Carolina*, 317 U.S. 287, 292, 63 S.Ct. 207, 210, 87 L.Ed. 279 (1942), and *Cramer v. United States*, 325 U.S. 1, 36 n. 45, 65 S.Ct. 918, 935 n. 45, 89 L.Ed. 1441 (1945)—in fact supports it. *See Griffin v. United States*, 502 U.S. at 52, 54–55, 112 S.Ct. at 470–71, 471–72.

*Griffin* clarifies *Yates* by explaining that it extends only to cases in which one of the possible bases of conviction was legally erroneous. *See id.* at 51–52, 112 S.Ct. at 470–71. *Griffin* distinguishes cases, like *Turner*, which concern convictions that may have rested on a basis that was not supported by the evidence, from those concerning convictions possibly resting on an invalid ground as a result of an error of law. *See id.* at 58–59, 112 S.Ct. at 473–74. It explains:

> In one sense "legal error" includes inadequacy of evidence—namely, when the phrase is used as a term of art to designate those mistakes that it is the business of judges (in jury cases) and of appellate courts to identify and correct. In this sense "legal error" occurs when a jury, properly instructed as to the law, convicts

on the basis of evidence that no reasonable person could regard as sufficient. *But in another sense*—a more natural and less artful sense—*the term "legal error" means a mistake about the law, as opposed to a mistake concerning the weight or the factual import of the evidence....* [W]e are using "legal error" in the latter sense.

*Id.* at 59, 112 S.Ct. at 474 (emphasis added).

Here, Nieves–Burgos asserts, and the government concedes, that there was insufficient evidence presented at trial to support the firearms conviction with respect to two of the three guns listed in the charge, that is, the two guns found in the cars. *Turner* and *Griffin* tell us quite clearly that Nieves–Burgos' verdict shall not be set aside on this basis alone. Rather, the verdict must stand so long as it is sufficiently supported by the evidence concerning the third firearm. We therefore must determine whether the evidence sufficiently supports Nieves–Burgos' conviction under 18 U.S.C. § 924(c)(1) as to the firearm found in room 311.

Before we move on, however, we acknowledge that, before *Griffin*, *Yates* appeared to set forth a rule that differed, if not conflicted, with the long-standing general rule recognized in *Turner*. Prior to *Griffin*, we cited authority relying on *Yates* in support of the proposition that a general verdict returned on a charge asserting numerous grounds for conviction must be vacated where one or more of the grounds is insufficiently supported by the evidence and it is unclear whether the jury relied on the insufficient ground. See *United States v. Moynagh*, 566 F.2d 799, 804 (1st Cir.1977), *cert. denied*, 435 U.S. 917, 98 S.Ct. 1475, 55 L.Ed.2d 510 (1978) (citing *United States v. Natelli*, 527 F.2d 311, 325 (2d Cir.1975), *cert. denied*, 425 U.S. 934, 96 S.Ct. 1663, 48 L.Ed.2d 175 (1976) (citing *Yates v. United States*, 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356)) ("We conclude that Moynagh's conviction on these counts cannot be sustained because each count contains a specification charging concealment ... and no evidence was introduced which supports any fraudulent concealment...."). *Griffin* renders this proposition unsound.[4]

---

4. We have on numerous occasions cited *Yates* in

accord with *Griffin's* interpretation of it. *See,*

We note that this type of issue may, in proper circumstances, be avoided: "[I]f the evidence is insufficient to support an alternative legal theory of liability, it would generally be preferable for the court to give an instruction removing that theory from the jury's consideration." *Griffin v. United States*, 502 U.S. at 60, 112 S.Ct. at 474–75. Aside from attempting to "unring the bell," however, when there are alternative bases for conviction, the trial court may be well advised to require a proffer of the evidence linking a particular defendant with a particular alternative. Also, the government should consider avoiding alternative pleading altogether, or the trial court might require each of the alternatives to be considered and proved separately.

## B. *Sufficiency of the Evidence*

Nieves–Burgos argues that the evidence at trial was not sufficient to support his conviction on count four for violation of 18 U.S.C. § 924(c)(1) as to the firearm found in room 311.

### 1. Standard of Review

In reviewing challenges to the sufficiency of evidence, "[o]ur task is to review the record to determine whether the evidence and reasonable inferences therefrom, taken as a whole and in the light most favorable to the prosecution, would allow a rational jury to determine beyond a reasonable doubt that the defendants were guilty as charged." *United States v. Mena–Robles*, 4 F.3d 1026, 1031 (1st Cir.1993), *cert. denied sub nom. Rivera v. United States*, —— U.S. ——, 114 S.Ct. 1550, 128 L.Ed.2d 199 (1994). We therefore resolve all credibility issues in favor of the verdict. *See United States v. Torres–Maldonado*, 14 F.3d at 100 (citation omitted). We acknowledge that a jury's determination need not be grounded in direct evidence; rather it may be based wholly on circumstantial evidence. *See id.* In addition, the evidence " 'need not exclude every reasonable hypothesis of innocence; that is,

the factfinder may decide among reasonable interpretations of the evidence.' " *Id.* (quoting *United States v. Cassiere*, 4 F.3d 1006, 1011 (1st Cir.1993) (citation omitted)). The court must satisfy itself "that the guilty verdict finds support in 'a plausible rendition of the record.' " *United States v. Echeverri*, 982 F.2d 675, 677 (1st Cir.1993) (quoting *United States v. Ortiz*, 966 F.2d 707, 711 (1st Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1005, 122 L.Ed.2d 154 (1993)).

### 2. Analysis

Section 924(c)(1), 18 U.S.C., makes unlawful the "use" of a firearm "during and in relation to" any Federal drug-trafficking crime. 18 U.S.C. § 924(c)(1).[5] A conviction under this section results in a mandatory sentence of imprisonment for a term of at least five years. *See id.* Nieves–Burgos was convicted of using the firearm found in room 311 during and in relation to the crime of possessing with the intent to distribute the controlled substance cocaine.

We examine the evidence to determine, first, appellant's possessory interest in the firearm at issue, *see United States v. Torres–Maldonado*, 14 F.3d at 102 (citing *United States v. Harrison*, 931 F.2d 65, 71 (D.C.Cir.), *cert. denied*, 502 U.S. 953, 116 L.Ed.2d 356 (1991)) ("in order to establish that a defendant 'used' a firearm for purposes of section 924(c)(1), 'the government must prove that the defendant actually or constructively possessed it' "), and, second, whether there exists "some facilitative nexus between the weapon and the criminal activity." *United States v. Castro–Lara*, 970 F.2d 976, 983 (1st Cir.1992), *cert. denied sub nom. Sarraff v. United States*, —— U.S. ——, 113 S.Ct. 2935, 124 L.Ed.2d 684 (1993).

#### a. *Possession*

Nieves–Burgos is alleged to have been in constructive possession of the gun found in room 311. Constructive possession exists when a person "knowingly has the

---

*e.g., United States v. Ochs*, 842 F.2d 515, 520 (1st Cir.1988); *United States v. Kavazanjian*, 623 F.2d 730, 739–40 (1st Cir.1980); *United States v. Driscoll*, 449 F.2d 894, 898 (1st Cir.1971), *cert. de-*

*nied*, 405 U.S. 920, 92 S.Ct. 948, 30 L.Ed.2d 790 (1972).

**5.** See *supra* note 2.

power and intention at a given time to exercise dominion and control over [a firearm], either directly or through others." *United States v. Torres–Maldonado*, 14 F.3d at 102.

The evidence indicates, though not overwhelmingly, that Nieves–Burgos was in constructive possession of the firearm found in room 311. The evidence supports the existence of the following facts: Nieves–Burgos rented and occupied room 311; he was a direct participant in the drug distribution scheme; the gun was found in a zippered bag, also containing $2,000 in cash, on a couch in room 311; Nieves–Burgos was less than two feet from the gun. Nieves–Burgos concedes in his brief that he "clearly was in control of Room 311." A jury reasonably could infer from these facts that the cash found in the bag that contained the gun was drug trafficking proceeds, and that Nieves–Burgos, a principal in the drug trafficking scheme who concededly was in control of the room, had knowledge of what was in the bag, and, because of his proximity to the gun, had the power and intention to exercise dominion over it.

Clearly, there is evidence in the record that weighs against this conclusion: no witness could link the gun or the bag directly to Nieves–Burgos; the bag concealing the gun was zippered; several co-defendants were found sitting within several feet of the gun, and Gotay–Colón, who was seated on the couch, may have been closer to the gun than was Nieves–Burgos. Nonetheless, our role is not to weigh the evidence; we are merely to ensure that some evidence exists to support sufficiently the jury's determination. *See United States v. Mena–Robles*, 4 F.3d at 1031. Again, the evidence supports the inference that Nieves–Burgos was in constructive possession of the gun: He concedes that he "clearly was in control of Room 311"; he was a principal with respect to the underlying offense of possession with intent to distribute; and, he was found near—less than two feet from—the gun.

This result is consistent with *Torres–Maldonado*, in which we concluded that the evidence at trial was insufficient to establish that appellants Torres–Maldonado and Gotay–Colón were in constructive possession of the gun found in room 311. *See United States v. Torres–Maldonado*, 14 F.3d at 102–03. We considered to be significant the absence of evidence that either appellant was involved in the drug distribution scheme: "Unlike the evidence against the other defendants ... the evidence against Torres–Maldonado and Gotay–Colón failed to establish any connection between these two defendants, on one hand, and those drug distribution transactions which appeared to involve guns, on the other." *Id.* at 102. Again, the evidence here shows that Nieves–Burgos was a direct participant in the drug distribution scheme.

### b. *Facilitative Nexus*

■ Use, as that term applies in § 924(c)(1), requires more than mere possession of a firearm, but does not require outwardly apparent utilization: "[the] weapon need not be brandished, displayed or discharged." *United States v. Reyes–Mercado*, 22 F.3d 363, 367 (1st Cir.1994) (citations omitted). To sustain a conviction under this section for the use of a firearm, there must be shown "some facilitative nexus between the weapon and the criminal activity." *Id.* (citations omitted).

■ We have stated that, " 'the government need not prove actual possession by the defendant, only that the firearm was readily accessible for the defendant's use' and that '[p]lacing a weapon nearby to protect a drug operation comes within the definition of "used" ' for purposes of section 924(c)." *United States v. Wight*, 968 F.2d 1393, 1396 (1st Cir.1992) (citing *United States v. Abreu*, 952 F.2d 1458, 1466 (1st Cir.), *cert. denied*, 503 U.S. 994, 112 S.Ct. 1695, 118 L.Ed.2d 406 (1992)). "[W]here a drug trafficker is not carrying a gun on his person, but has one nearby, the court's critical concern is not whether the gun was 'instantly available' or 'exclusively dedicated to the narcotics trade,' but whether it was 'available for use' in connection with the narcotics trade." *United States v. Castro–Lara*, 970 F.2d at 983. Among the factors we examine in determining whether a gun was available for use in connection with a drug operation are the proximity of the gun to the drugs and drug proceeds and the availability of the gun to the defendant. *See, e.g., United States v.*

439

*Paulino,* 13 F.3d 20, 26 (1st Cir.1994) ("Drugs, drug paraphernalia, and a loaded revolver were located in close proximity to one another. [Appellant] had an apparent possessory interest in, and a significant degree of control over, the premises. On these facts, a reasonable factfinder certainly could find the requisite facilitative nexus...."); *United States v. Castro–Lara,* 970 F.2d at 983 ("Appellant was apprehended in his car, at the scene of a drug pickup, with the gun inside the car's trunk.... [W]e believe a rational jury was free to conclude that the location of the firearm—near a large sum of cash, in close proximity to live ammunition, and at a place where drugs were to be delivered—coupled with the timing—[appellant] brought the gun to the airstrip in the course of taking delivery of a sizable quantity of cocaine—supported a finding that the firearm was 'available for use' during and in relation to the drug trafficking crime.").

■ There was testimony at trial that the gun was found in room 311 in a zippered bag less than two feet from Nieves–Burgos, and that also found in the room were several quantities of cocaine, bundles of cash, and various instruments and supplies typically utilized for packaging cocaine. This evidence is sufficient to support a finding that the gun in room 311 was used by Nieves–Burgos to protect the drugs of which he was in possession. Although there is evidence in the record that weighs against this conclusion, the jury presumably considered all of the evidence and drew the permissible inference that the gun was used by Nieves–Burgos during and in relation to his possession with intent to distribute cocaine, in violation of § 924(c)(1). *See United States v. Batista–Polanco,* 927 F.2d 14, 17 (1st Cir.1991) ("the factfinder may decide among reasonable interpretations of the evidence").

## CONCLUSION

Nieves–Burgos' conviction is supported sufficiently by the evidence and stands without error. The conviction is affirmed.

*Affirmed.*